Gordon MAY, Plaintiff,

v.

ROADWAY EXPRESS, INC. and the Administrators of the Roadway Services, Inc. Stock Bonus Plan, Defendants.

No. 92–72913.

United States District Court, E.D. Michigan, S.D.

Feb. 17, 1993.

Anthony S. Spokojny, Farmington Hills, MI, for plaintiff.

Honigman Miller Schwartz & Cohn by Ingrid K. Brey, Michael J. Friedman, Detroit, MI, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Discovery in this matter closed November 1, 1992. On November 16, 1992, defendants filed the instant motion to dismiss and motion for summary judgment. Plaintiff responded January 20, 1993, after a stipulation to adjourn the hearing date was filed December 30, 1992. Defendants replied January 26, 1993.

### I. Facts

Plaintiff Gordon May began working for Roadway Express, Inc. on May 22, 1972. After a series of new assignments and promotions, plaintiff was appointed August 12, 1979, to be terminal manager of Roadway Express' Pontiac terminal in Pontiac, Michigan. Plaintiff remained in this position until June 23, 1985, when he accepted a temporary, special assignment with the Detroit terminal which was to lead to a

position with Roadway Package System, Inc., another subsidiary of Roadway Services, Inc.[1]

While plaintiff was in this temporary position, plaintiff's superior, Frank Cahill, made attempts to have plaintiff placed with Roadway Package System, Inc. Immediately after his transfer to Detroit, plaintiff was offered a job with this entity as terminal manager of the Lansing, Michigan terminal. Plaintiff refused this offer because he did not wish to relocate his family from the Pontiac area. Subsequent attempts on the part of Cahill to secure plaintiff a position with Roadway Package System, Inc. failed because the entity did not extend any further offers to plaintiff.

On April 13, 1986, plaintiff was demoted from terminal manager to office manager at the Detroit terminal. Plaintiff remained in the position of office manager until June 12, 1987, when he left employment with Roadway Express, Inc., after submitting a letter of resignation dated May 29, 1987. In his letter, plaintiff states the reasons for his decision to resign were primarily because he had received an offer to teach at Oakland Community College, and secondarily because he felt his advancement opportunities within Roadway Express, Inc. were limited "absent totally displacing" his family and himself from the Pontiac area. Ex. J. to Defendants' Brief.

The Stock Bonus Plan of Roadway Services, Inc. provides that if an employee leaves the employ of Roadway Services, Inc. voluntarily prior to the vesting of stock previously credited to his or her account, such unvested stock shall not become part of the employee's stock distribution. Furthermore, if termination is voluntary, the employee's vested shares are to be distributed in April of the third year following termination. If termination is involuntary (that is, initiated by the employer, or occurring as a result of death, permanent and total disability, or retirement), then all stock previously accrued to the employee's account but not yet vested shall be deemed vested; and all vested amounts shall be distributed to the employee in

April of the year following termination. Ex. A to Defendants' Brief at 25.

Plaintiff claims that his resignation occurred as a result of his demotion by defendant Roadway Express, Inc. and therefore was not voluntary but forced. Defendants claim that because plaintiff remained in his demoted position for thirteen months, plaintiff constructively accepted the demotion; and his subsequent resignation was voluntary. Defendants further claim that good faith efforts on the part of plaintiff's supervisor had been made to secure a position with Roadway Package System, Inc.; that such efforts evidence a desire on the part of defendant Roadway Express, Inc. to retain plaintiff as an employee; and that plaintiff left voluntarily to pursue a new career opportunity as evidenced by his resignation letter.

As early as July 6, 1987, plaintiff was notified by defendants that his termination was deemed voluntary and that he therefore would not be receiving the 236.634 shares that had accrued to his account in the 1985–87 period, but had not yet vested. In February 1989, plaintiff's counsel contacted defendants to question the legality of the plan's provisions. In response, defendants sent plaintiff's counsel a copy of the plan, an explanation of the plan's legality, and an explanation of the procedures to be followed to institute a formal appeal of the denial of benefits.

In May 1990, plaintiff's counsel again wrote to defendants, this time stating that plaintiff believed his termination had not been voluntary. Defendants responded by pointing again to the procedures for appeal.

In August 1990, plaintiff submitted materials instituting a formal appeal. Plaintiff's submission consisted of a letter explaining, *inter alia*, that his demotion had "dead-ended" him and thereby caused his departure; an internal memorandum detailing a successful year in 1984 and mentioning plaintiff's terminal as one of the more successful terminals; and an internal memorandum indicating that an improvement in

1. Roadway Express, Inc. is also a subsidiary of      Roadway Services, Inc.

the facilities at the Pontiac terminal had been implemented only after plaintiff was moved to Detroit. Exs. Q, R and S to Defendants' Brief. Based upon its review of these documents, upon the explanation of Frank Cahill as to events surrounding plaintiff's resignation, and upon an administrative policy (discussed *infra* ), the Stock Bonus Plan Review Committee decided that plaintiff's resignation was voluntary and that his appeal should therefore be denied.

## II. Defendants' Motion for Summary Judgment

### A. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2609, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### B. Analysis

The issue in this motion for summary judgment is whether plaintiff has presented evidence that there exists a genuine issue of material fact as to whether the

Stock Bonus Plan Committee acted arbitrarily or capriciously in determining that plaintiff's resignation was voluntary.

■ In *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), the United States Supreme Court declared that a denial of benefits challenged under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), is to be reviewed *de novo* unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. In order to apply the arbitrary and capricious standard of review, there must be a clear grant of discretion to the administrator. *Anderson v. Great West Life Assurance Co.,* 942 F.2d 392, 395 (6th Cir.1991); *Brown v. Ampco–Pittsburgh Corp.,* 876 F.2d 546, 550 (6th Cir.1989).

■ The Stock Bonus Plan in effect at the time of plaintiff's termination was the amended and restated plan effective as of January 1, 1983.[2] Under this plan, the committee is granted "the powers to construe the terms of the Plan, to determine all questions that may arise under the Plan, and to resolve all issues relating to the eligibility of individuals to participate in the Plan." Ex. K to Defendants' Brief at 18. Clearly, this language implicates the holding in *Bruch* and requires this court to review the decisions of the fiduciary under the arbitrary and capricious standard of review.

■ Defendants claim that, in arriving at its decision, the committee relied not only on the differing versions of events offered by plaintiff and by Cahill but also on an administrative policy first adopted in 1977. The interoffice memorandum detailing acceptance of the policy, as amended in June 1990, reads in relevant part:

When determining whether a participant's termination following the constructive acceptance of a demotion is voluntary or one initiated by the company, the Committee will consider all facts and circumstances surrounding the termination, as it does in any other termination case. However, if a participant accepts a demotion (and has not transferred to a new location) and then leaves the company within three (3) accounting periods, his/her termination will be considered company initiated, notwithstanding any other circumstances surrounding the termination.... The Committee based its decision upon a previous policy determination made by the Stock Bonus Plan Administrative Committee in December 1977 concerning transfers. In the meeting, the Committee members reaffirmed this policy and noted it should be applied separately from the above policy, as it involves transfers of location.

Ex. U to Defendants' Brief. Plaintiff's main argument in response to defendants' motion is that this policy of defendants is unreasonable.

Plaintiff claims that the policy was "secret," and that the committee acted arbitrarily and capriciously in applying it. Use of an undisclosed interpretive guideline is not arbitrary or capricious if the guideline reasonably interprets the plan. *Egert v. Conn. Gen. Life Ins.,* 900 F.2d 1032, 1036 (7th Cir.1990). The guideline appears to be designed primarily to protect employees who are effectively terminated by being offered transfers or demotions which are unacceptable to them. The three-month period apparently serves as a guideline for determining when it becomes less likely that an employee's resignation was the result of such transfer or demotion.[3]

---

2. The plan was again amended and restated effective January 1, 1989. The provisions of this amendment specifically provide that judicial review of decisions of the fiduciary shall be limited to the extent allowed by law and that maximum deference shall be given to the decisions of the fiduciary. Because the court finds, *infra,* that the 1983 plan provides sufficient discretion to the fiduciary to invoke the arbitrary and capricious standard of review and because

plaintiff expressly concedes that such standard of review is applicable, the court need not decide whether the 1989 amendment is applicable to plaintiff's case.

3. Though nowhere in either party's brief is "accounting period" defined, plaintiff refers to the three accounting period rule as a three-month rule; and defendants do not contradict this interpretation. Thus, the court is led to believe

This is not a case where plaintiff resigned soon after the expiration of the three-month period; nor a case where the committee, in later reviewing the case, applied a rigid interpretation of the rule. Plaintiff argues that three months is not sufficient time to search for another job after being "terminated" by a demotion or unacceptable transfer. Because plaintiff remained in his position for thirteen months after his demotion,[4] and because defendants have shown that the committee did not base its decision solely on the guideline but rather on an interpretation of the facts surrounding plaintiff's resignation (see Ex. C to Defendants' Brief), the court need not decide in this case whether three months is a reasonable amount of time.

The court finds that the committee did not act arbitrarily and capriciously in determining that plaintiff resigned his employ voluntarily. As one factor in its decision, the committee considered plaintiff's willingness to remain in a position for more than a year and found that such willingness, in light of the events surrounding plaintiff's resignation, indicated constructive acceptance of the position. The committee also considered the resignation letter of plaintiff wherein plaintiff gave no indication that he was reluctant to leave; to the contrary, plaintiff's resignation indicates strongly that plaintiff was excited about his offer of employment with Oakland Community College and was happy to be moving on to a new career.

Plaintiff had accepted the demotion as an interim step before receiving a position as terminal manager of what was to be a new terminal of Roadway Package System, Inc., located in Detroit, Michigan. The opening of that new terminal, however, never occurred because the company found that it had insufficient business to warrant the previously planned expansion. Plaintiff then was in an unfortunate position: his old position as terminal manager of the Pontiac, Michigan terminal had been filled and his promised position had been cancelled.

About the time plaintiff was demoted, plaintiff was offered a position in Lansing, Michigan with Roadway Package System, Inc.; plaintiff refused this offer because it would have meant uprooting himself and his family. Cahill, plaintiff's superior, told the committee that he knew plaintiff was frustrated by these events. Cahill told the committee that, at the time plaintiff resigned, Cahill was making continued efforts to place plaintiff in a new, more suitable position, though he was having difficulty in doing so. (Ex. D to Defendants' Brief at 4.) Plaintiff claimed in a letter to the committee dated August 2, 1990 that Cahill told plaintiff that the only way he would receive a promotion would be if he outlived current upper management. (Ex. Q to Defendants' Brief at 2.) In oral argument, plaintiff's counsel admitted that it is possible that had plaintiff not resigned when he did, a position with Roadway Services, Inc. or one of its subsidiaries, suitable to plaintiff's qualifications, might eventually have been found for him. The committee's decision indicates that it believed, based on Cahill's statements, that the company was hoping to find a position for plaintiff.

■ Plaintiff also argues that there is a conflict of interest in this case because there is identity between the administrator, the fiduciary administering the plan, and the employer. In *Bruch*, 489 U.S. at 115, 109 S.Ct. at 956, the Supreme Court held that a conflict of interest, if one exists, must be weighed as a factor in determining whether there is an abuse of discretion.

Plaintiff argues that "the restriction placed upon the plan benefits solely the employer; the corollary finding, that resignation within three months is, in fact, attributable to the employer, does not exist." Although the court has some difficulty in deciphering the meaning of this sentence, it

that an "accounting period" is equal to one month.

**4.** Defendants claim that plaintiff remained in the position for fourteen months. However, because the court must accept plaintiff's version of events for purposes of this motion, the court bases its decision on a thirteen-month period of constructive acquiescence.

would appear that the term "restriction" refers to the provision of the plan which denies a resigning employee stock that has been credited to his stock bonus plan account but has not yet vested; the second part of the sentence seems to refer to the interpretative three-accounting-period rule which plaintiff claims is not fairly read into the plan. As the court discusses, *supra*, the three-accounting-period rule appears actually to benefit employees because it protects those who resign as a result of a demotion, so long as the resignation follows the demotion within a certain period of time.

As for the restriction on employees who depart voluntarily, while it is true that the individual committee review members here may benefit incidentally, as plan participants and future beneficiaries, from the denial of plaintiff's benefits, the employer reaps no benefit from denying plaintiff his unvested shares of stock; such a tenuous relationship between the decision to deny plaintiff's benefits and the benefit, if any, gained by the individual committee members as stock plan beneficiaries, is not enough to establish a presumptive conflict of interest. *See Woolsey v. Marion Lab.*, 934 F.2d 1452, 1459–60 (10th Cir.1991). Plaintiff does not put forth any factual or legal argument on the issue of conflict beyond the assertion that a conflict exists and that the conflict must be weighed as a factor in determining whether there was an abuse of discretion. The court does not find any conflict of interest here significant enough to have presumptively tainted the committee's decision.

For the foregoing reasons, the court finds that plaintiff has failed to show that there exists a genuine issue of material fact as to whether the committee acted arbitrarily or capriciously in denying plaintiff's claim for unvested benefits.

III. Defendants' Motion to Dismiss

Defendants' motion is also brought as a motion to dismiss for failure to state a claim upon which relief can be granted as to defendant Roadway Express, Inc. Defendants claim that defendant Roadway Express, Inc. is not a proper party to this

action under 29 U.S.C. §§ 1132(a)(1)(B) and 1132(d)(2). In his response, plaintiff does not address this part of defendants' motion, and during oral argument, plaintiff's counsel stated that he agrees that defendant Roadway Express, Inc. is not a proper party to this action.

▇ Under ERISA, a benefit plan is a separate legal entity, 29 U.S.C. § 1132(d)(1); and any judgment against a plan is enforceable against only the plan as an entity, and not against any other person or entity without a showing of personal liability in an individual capacity. 29 U.S.C. § 1132(d)(2). Plaintiff alleges only that Roadway Express, Inc. was plaintiff's employer and that Roadway Express, Inc. acted "through the Defendant Administrator of the Stock Bonus Plan." Amended Complaint at paragraphs 4 and 21.

▇ Although an employer could be sued under ERISA in its capacity as plan administrator, here defendant Roadway Express, Inc. was not the administrator of the Stock Bonus Plan; its parent corporation Roadway Services, Inc. was the administrator of the plan.

For the foregoing reasons, the court finds that plaintiff has failed to state a claim against Roadway Express, Inc.

### ORDER

Therefore, it is hereby ORDERED that defendants' motion for summary judgment as to the claim against defendant Administrators of the Roadway Services, Inc. Stock Bonus Plan is hereby GRANTED.

It is further ORDERED that defendants' motion to dismiss plaintiff's claim as to defendant Roadway Express, Inc. pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is hereby GRANTED.

SO ORDERED.