**REDALL INDUSTRIES, INC.,** Michael Powell, Harry Geelen, and Stanley Gardella, Trustees of the Redall Industries, Inc. Defined Benefit Pension Plan, Plaintiffs,

v.

Lawrence J. **WIEGAND,** Lawrence J. Wiegand and June Wiegand, Trustees of the L.J.W., Inc. Money Purchase Plan and Trust, Alpha & Omega Financial Companies, namely: Alpha & Omega Pension Services, Inc., Personal Economics, Inc., and Horizon Financial Services, Inc.; and Mary F. Hull, Defendants.

**YALE–REDALL COMPANY** n/k/a L.J.W. Company, Inc., Lawrence J. Wiegand, and June Wiegand, Counter–Plaintiffs,

v.

**REDALL INDUSTRIES, INC.** and Michael R. Powell, Counter–Defendants.

Lawrence J. **WIEGAND,** June Wiegand, and Yale–Redall Company, Inc. n/k/a L.J.W. Company, Inc., Cross–Plaintiffs,

v.

**ALPHA & OMEGA** a/k/a Alpha & Omega Financial Companies, namely: Alpha & Omega Pension Services, Inc., Personal Economics, Inc., and Horizon Financial Services, Inc.; and Mary F. Hull, Cross–Defendants.

Civ. A. No. 93–73235.

United States District Court, E.D. Michigan, Southern Division.

Dec. 16, 1994.

**176**

Michael S. Leib, Maddin, Hauser, Wartell, Roth, Heller & Pesses, Southfield, MI, for Yale–Redall Co.

Freeman McKenzie, P.C., Larry E. Powe and Antonie W.Y. Walsh, Mount Clemens, MI, for Michael Powell.

Kohl, Secrest, Wardle, Lynch, Clark & Hampton, Roger F. Wardle and Heidi D. Hudson, Farmington Hills, MI, for Mary F. Hull.

Daniel G. Yoe, Graves & Yoe, Lawrence, KS, for Personal Economics.

### MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Plaintiff Trustees of the Redall Industries Inc. Defined Benefit Pension Plan ("Trustees") and plaintiff Redall Industries, Inc. ("Redall") filed this action against defendant Lawrence J. Wiegand under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* In Count I of the first amended complaint, plaintiff Trustees seek restitution of $427,281 which the Redall Industries Inc. Defined Benefit Pension Plan ("Redall Plan") overpaid to Wiegand as part of his pension benefits. Wiegand filed a counterclaim against Redall.[1] In Count I of the counterclaim, Wiegand seeks to recover the $427,281 if Wiegand is required to return that money to the Redall Plan. Count I of the counterclaim is based on a claim for reformation of the "Contract to Purchase" through which Wiegand sold the assets of the Yale–Redall Company ("Yale") to Redall. Wiegand alleges that the parties intended Wiegand to receive the overpaid benefits as part of the consideration for the assets of Yale. Before the court are two motions: (1) Plaintiff Trustees' motion for partial summary judgment on Count I of the first amended complaint; and (2) Counter-defendant Redall's motion for partial summary judgment on Count I of Wiegand's counterclaim. For the reasons discussed below, the court will deny both motions.

### I.  Facts

In September 1990, Michael R. Powell and Harry J. Geelen, as sole shareholders of Redall, purchased the assets of Yale from its sole owner, Lawrence J. Wiegand. Prior to the purchase, Powell was Yale's controller. Powell solely negotiated with Wiegand the terms of the Contract to Purchase. During the time of the negotiations, Powell informed Wiegand that Wiegand would receive approximately $1,000,000 from the Yale–Redall Company Defined Benefit Plan ("Yale Plan").

According to the terms of the Contract to Purchase, Wiegand would receive all his rightfully accrued pension or profit sharing benefits and insurance benefits and Redall would provide Wiegand with other consideration totaling $6,700,000. Among the terms of the Contract to Purchase, Redall also agreed: (1) to assume and maintain the Yale Plan, which was renamed the Redall Plan; (2) to seek Wiegand's approval before making any major changes in employee benefits, including major changes in retirement, pension, and/or profit sharing plans for employees; and (3) not to increase the salaries and fringe benefits of the purchasers from their August 31, 1990 level unless Wiegand approved the increase.

On September 6, 1991, Redall's actuaries sent a letter to Powell indicating that Wiegand was entitled to benefits of $974,346 from the Redall Plan, administered pursuant to ERISA. Wiegand received the $974,346 from the Redall Plan by the end of September 1991. Wiegand deposited most of the money into the L.J.W., Inc. Money Purchase Plan and Trust, of which Wiegand and his wife are trustees.

After Wiegand received his benefits, Redall discovered that Wiegand's benefits had

---

1. Wiegand filed the counterclaim along with June Wiegand and the Yale–Redall Company.

been miscalculated because subchapter S earnings were incorrectly included in the calculation. Wiegand agrees that the Redall Plan paid him more than the correct value of his vested accrued benefits. At oral argument, the parties agreed that Wiegand was overpaid $427,281.

When the Trustees requested that Wiegand return the overpaid benefits, Wiegand refused. Powell, Geelen, and Gardella, as co-trustees and named fiduciaries of the Redall Plan, brought suit against Wiegand under ERISA, 29 U.S.C. § 1132(a)(3), seeking restitution of the overpayment. Wiegand filed a counterclaim against Redall, seeking reformation of the Contract to Purchase.[2] In Count I of the counterclaim, Wiegand requests that Redall reimburse him for the overpaid benefits if the court grants the Trustees' claim for restitution of the overpaid benefits. Also in Count I of the counterclaim, Wiegand alleges that if his request is not granted then Redall will be unjustly enriched. Trustees bring a motion for partial summary judgment on their claim for restitution of the overpaid benefits. Redall brings a motion for partial summary judgment on Wiegand's counterclaim for reformation of the Contract to Purchase.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a

2. Wiegand filed the counterclaim with his wife, June Wiegand, and Yale. When the court addresses arguments presented by Wiegand in the counterclaim and in response to Redall's motion for partial summary judgment on Count I of the counterclaim, those arguments are also presented by the other two counter-plaintiffs.

directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings. *Id.*

### III. Analysis

#### A. Restitution

█ The Trustees bring their claim for restitution under 29 U.S.C. § 1132(a)(3). Section 1132(a)(3) provides that a fiduciary of an ERISA plan may bring a civil action for the following reasons:

(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or

(B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

*Id.* (emphasis added). In their motion for partial summary judgment, the Trustees argue that there is no issue of material fact on their restitution claim because: (1) the parties agree that Wiegand received $974,346, and (2) the parties agree that Wiegand received an overpayment of $427,281. However, Trustees must also show that equity requires Wiegand to return the overpaid benefits.

In his response to the Trustees' motion for partial summary judgment, Wiegand alleges that restitution is not appropriate relief in this case because he relied on receiving approximately $1,000,000 in pension benefits and if he knew the correct amount of the benefits he would not have sold Yale. In *Wells v. U.S. Steel & Carnegie Pension Fund, Inc.,* 950 F.2d 1244, 1251 (6th Cir. 1991), the Sixth Circuit held that the district court should have considered the inequitable impact of requiring beneficiaries of an ERISA plan to remit overpayments they had received. The court suggested that on remand the district court consider *Restatement (Second) of Trusts* § 254, comment e and III *Scott on Trusts* § 254.1. *Wells,* 950 F.2d at 1251 n. 3. Both treatises explain that recovery of an overpayment by a trustee will not be allowed where the beneficiary, in reliance on the correctness of the amount of benefits, changed his position so that it would be inequitable to compel him to make restitution. Wiegand argues that many facts support a finding that he relied on receiving approximately $1,000,000 in benefits from the Redall Plan as part of the consideration for selling Yale's assets. Wiegand was informed by Powell, who was controller for Yale, that Wiegand's pension benefits were to be approximately $1,000,000. Wiegand also contends that the terms of the Contract to Purchase illustrate that the parties relied on Wiegand receiving the overpaid benefits. Wiegand argues that the parties protected his rights to collect his benefits by specifically referring to Wiegand's right to collect his benefits and agreeing that Redall would seek Wiegand's approval before making major changes in the Redall Plan.

Wiegand argues that restitution is not appropriate in this case because he would not be unjustly enriched if the court permitted him to keep the overpayment. Wiegand cites a three part test for the federal common law of unjust enrichment set forth in *Provident Life & Acc. Ins. Co. v. Waller,* 906 F.2d 985 (4th Cir.1990), a case involving an ERISA plan administrator's action to recover benefits distributed to a plan beneficiary. In *Provident Life,* the court required plaintiff to show that (1) it had a reasonable expectation of reimbursement, (2) defendant should reasonably have expected to reimburse the plan, or (3) society's reasonable expectation of person and property would be defeated by nonpayment. *Id.* at 993, 994 (citing *Corbin on Contracts* § 19A, at 50 (Supp.1989)). Wiegand argues that there is a material question of fact as to whether the plan has a reasonable expectation of reimbursement when Wiegand was assured by Powell that he would receive approximately $1,000,000 in benefits. Wiegand argues that he does not

expect to reimburse the plan because he relied on receiving those benefits when he sold Yale's assets. Lastly, Wiegand argues that society's expectations would not be defeated if he retained benefits which he funded as sole shareholder of Yale. Wiegand argues that as sole shareholder of Yale, his contributions to the Yale Plan funded his overstated benefits and therefore he would not be unjustly enriched if he were permitted to keep those benefits.

In their reply, the Trustees argue that the court should grant restitution because the Redall Plan will lose its status as a qualified pension plan under Section 401 of the Internal Revenue Code of 1986. The Trustees allege that the overpayment to Wiegand will be construed as a discriminatory payment and will disqualify the Redall Plan. However, Trustees' expert, Terrance Borton, did not make such an unqualified statement. Borton stated that if the Redall Plan does not recover the overpaid benefits then the qualification of the Redall Plan will be "in question." Borton Dep. at 128–129. Borton also stated that the Redall Plan is presumptively qualified at this time. *Id.* at 131.

In their supplemental brief, Trustees further argue that if the court does not grant restitution, then the Redall Plan will face a "shortfall" because it will have fewer assets than liabilities. Trustees' expert, Alwilda Reed, stated that the Redall Plan would have fewer estimated assets than estimated benefit liabilities even if the court ordered restitution of Wiegand's overpaid benefits. Exhibit A to Trustees' supplemental brief. Trustees' expert Borton admitted that Redall failed to make any contribution to the Plan for the plan year ending March 31, 1993 "based upon the assumption that the plan had assets receivable from Mr. Wiegand." Borton Dep. at 101. The Trustees admit that the problem can be solved by Redall contributing to the Redall Plan to satisfy the shortfall in assets.

At oral argument, the Trustees argued that the Redall Plan is a separate entity from Redall and therefore Wiegand should return to the Redall Plan the amount he was overpaid. However, this case is more complex than described by the Trustees. Wiegand argues that in the instant case, the Redall Plan is intertwined with Redall based on the actions of the Trustees and the terms of the Contract to Purchase. The Trustees of the Redall Plan are also: (1) the owners of Redall who purchased Yale's assets from Wiegand and (2) employees of Redall who are beneficiaries of the Redall Plan. Under the terms of the Contract to Purchase, Wiegand was promised his benefits and Redall agreed to seek Wiegand's approval before making any major changes to the Redall Plan. Also, a return of funds to the Redall Plan will benefit Redall by decreasing the funds that Redall is required to contribute to the Redall Plan. Reed Dep. at 31 and Borton Dep. at 116. Wiegand argues that the facts of this case illustrate that Redall and the Redall Plan were intertwined and therefore restitution to the Redall Plan should not be granted without a determination of Wiegand's counterclaim against Redall for contract reformation.

The court finds that Wiegand has presented material issues of fact as to whether the appropriate equitable relief in this situation is for Wiegand to return the $427,281 to the Redall Plan. Therefore, the court cannot grant Trustees' motion for partial summary judgment on their claim for restitution from Wiegand.

### B. Contract Reformation

Wiegand filed a counterclaim for reformation of the Contract to Purchase, seeking reimbursement from Redall for the overpaid benefits if the court grants the Trustees' claim for restitution of the overpaid benefits. Redall argues in its motion that Wiegand's belief that he would receive approximately $1,000,000 in pension benefits was a unilateral mistake. Wiegand argues in his response to Redall's motion for partial summary judgment that the parties made a mutual mistake because they intended that he receive approximately $1,000,000 in benefits, which included the $427,281 overpayment. Wiegand argues that there is substantial evidence that the parties relied on Wiegand being entitled to approximately $1,000,000 in benefits from the Redall Plan. Powell, who was Yale's controller and sole negotiator on behalf of the purchasers, informed Wiegand that Wiegand's pension benefits would be approxi-

mately $1,000,000. Wiegand also cites the provisions in the Contract to Purchase that protect Wiegand's pension benefits, which Powell and Wiegand believed were approximately $1,000,000. In these provisions, Redall agreed to the following: (1) to assume and maintain the Yale Plan; (2) to seek Wiegand's approval before any major change was made to the Redall Plan; (3) to seek Wiegand's approval before the purchasers increased their salaries; and (4) Wiegand would receive the pension benefits to which he was entitled. Under Michigan law, a court may reform a contract when there is clear evidence of a mutual mistake. *Capitol S & L Ass'n v. Przybylowicz*, 83 Mich.App. 404, 408, 268 N.W.2d 662 (citing *Ross v. Damm*, 271 Mich. 474, 481, 260 N.W. 750 (1935)). The court finds that Wiegand has alleged a genuine issue of material fact with respect to whether the parties made a mutual mistake regarding the amount of Wiegand's benefits.

Redall argues that even if the parties made a mutual mistake the court may not reform the contract because the mistake was made regarding an extrinsic fact. *Marshall v. Marshall*, 135 Mich.App. 702, 710, 355 N.W.2d 661 (1984). The court finds that the same facts that Wiegand alleged to show that the parties made a mutual mistake also create a genuine issue of material fact as to whether the amount Wiegand would receive in benefits was a fact integral to the Contract to Purchase.

Redall also argues in its motion for partial summary judgment that Wiegand's restitution of benefits to the Redall Plan should not affect his contract with Redall because Redall and the Redall Plan are separate entities. Redall relies on *May v. Roadway Express, Inc.*, 813 F.Supp. 1280 (E.D.Mich.1993) and *Warren v. Oil & Chemical Atomic Workers Union*, 729 F.Supp. 563 (E.D.Mich.1989). However, both *May* and *Warren* involved actions by beneficiaries for benefits from ERISA plans, in which the court determined that the employer was not a proper party to the action. Wiegand does not seek to recover pension benefits. Rather, Wiegand's counterclaim for contract reformation against Redall is based on the negotiations and the terms of the Contract to Purchase signed by Redall and Wiegand. Wiegand argues that the parties intended for Wiegand to receive a total of approximately $7,700,000 as consideration for the sale of Yale's assets. The court finds that Wiegand has presented a material question of fact as to the total consideration that the parties to the Contract to Purchase intended for Wiegand to receive for the sale of Yale's assets.

■ In the counterclaim, Wiegand contends that Redall would be unjustly enriched if the court grants Trustees' claim for restitution but does not require Redall to reimburse Wiegand. Under Michigan law, the elements for a claim of unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiffs; and (2) the benefit is inequitable for the defendant to retain. *In re McCallum Estate*, 153 Mich.App. 328, 335, 395 N.W.2d 258 (1986). The amount of money that Redall is required to contribute to the Redall Plan is decreased by the amount of money recovered by the Redall Plan from Wiegand. Reed Dep. at 31 and Borton Dep. at 116. As discussed above, Wiegand has presented a material issue of fact as to whether Redall and Wiegand relied on Wiegand receiving approximately $1,000,000 in benefits as part of the consideration for the sale of Yale's assets. As a result, the court finds that Wiegand has presented a material issue of fact as to whether Redall will be unjustly enriched if the Redall Plan recovers the overpaid benefits.

■ The court finds that Wiegand has presented material issues of fact as to whether the total consideration that the parties intended Wiegand to receive under the terms of the Contract to Purchase. Therefore, the court cannot grant Redall's motion for partial summary judgment on Wiegand's counterclaim for reformation of the Contract to Purchase.

### ORDER

Therefore, it is hereby **ORDERED** that plaintiff Trustees' motion for partial summary judgment on Count I of the first amended complaint seeking restitution is **DENIED.**

It is further **ORDERED** that counter-defendant Redall's motion for partial summary judgment on Count I of Wiegand's counterclaim seeking reformation of the Contract to Purchase is **DENIED.**

**SO ORDERED.**