PLASTIC ENGINEERED
COMPONENTS, INC.,
Plaintiff,

v.

TITAN INDEMNITY COMPANY,
Defendant.

No. 1:95 CV 427.

United States District Court,
W.D. Michigan.

March 18, 1997.

Peter S. Shek, Saginaw, MI, for Plaintiff.

Joseph Sukup, Sukup & Grimm, P.C., Grand Rapids, MI, for Defendant.

## OPINION

ENSLEN, Chief Judge.

This matter is before the Court on the plaintiff's motion for reconsideration of the Court's July 17, 1996 opinion and defendant's second motion for summary judgment. Plaintiff Plastic Engineered Components, Inc. (PEC), an employer with a health benefits plan covered by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461, filed this action against Titan Indemnity Company (Titan), a

no-fault insurer, for reimbursement of benefits paid to its former employee, Brandon Buller. Plaintiff bases its claims on both the subrogated claims of Buller and on an independent equitable right of reimbursement resulting from defendant's unjust enrichment. Upon review, the Court denies plaintiff's motion for reconsideration and, finding no basis upon which plaintiff can recover, grants defendant's motion for summary judgment.

## BACKGROUND

The following facts are uncontroverted. Brandon Buller was injured in a car accident on July 3, 1994. At that time, he was covered by a no-fault automobile insurance policy he had with Titan Indemnity Company. Having been recently fired, he was also eligible to extend his coverage under PEC's ERISA health plan by paying his premiums pursuant to the Consolidated Omnibus Budget Consolidation Act of 1985 (COBRA), 29 U.S.C. §§ 1161–1168.[1] Titan then paid Buller's premium on his behalf within the time allotted. Having accepted the payment from Titan, PEC then paid Buller's medical expenses, which Buller readily accepted without objections. After Buller accepted $88,750 in reimbursements for medical expenses from PEC, Titan ceased paying the premiums. Buller's coverage under the PEC plan then lapsed and Titan thereafter paid all benefits. PEC now seeks recovery of the payments it made to Buller.

The parties filed cross-motions for summary judgment. Plaintiff PEC argued that defendant Titan should be held liable for Buller's expenses because: 1) Buller was not covered for these injuries under the ERISA plan's Third Party Liability Clause; 2) the ERISA plan did not allow Titan to extend Buller's coverage; and 3) even if Buller were covered, the ERISA plan's Coordination Clause made Titan primarily liable. PEC further alleged that, because Titan had wrongfully paid Buller's premiums in order to avoid its statutory and contractual duty to Buller, even if PEC were primarily liable, PEC was entitled to reimbursement under a theory of unjust enrichment. The Court

held that neither the Third Party Liability Clause nor the Coordination Clause rendered Titan primarily liable, but denied both motions because the parties had not properly briefed all relevant issues. In response, PEC filed the instant motion to reconsider and defendant filed a second motion for summary judgment. The Court then called for further briefing to determine whether it still had jurisdiction over the remaining controversy.

## LEGAL STANDARDS

### 1. *Motion to Reconsider*

Federal Rule of Civil Procedure 60(b) invests the Court with the discretion to "entertain an independent action to relieve a party from a judgment, order, or proceeding." Rule 60(b) specifically provides that such relief is merited for the following reasons: 1) mistake, inadvertence, surprise, or excusable neglect; 2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); 3) fraud, misrepresentation, or other misconduct of an adverse party; 4) the judgment is void; or 5) the judgment has been satisfied, released, or discharged, or vacated. In addition, the Court may provide relief under Rule 60(b)(6) for "any other reason justifying relief from the operation of the judgment." In addressing the availability of relief under Rule 60(b)(6), the Sixth Circuit has made clear that courts should apply Rule 60(b)(6) only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule. *Lewis v. Alexander,* 987 F.2d 392, 395 (6th Cir.1993); *see also Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995). The Circuit has also stated that "[t]he parties may not use a Rule 60(b) motion as a substitute for an appeal.... Notwithstanding the extraordinary nature of relief under 60(b)(6), district courts may employ subsection (b)(6) as a means to achieve substantial justice when 'something more' than one of the grounds contained in Rule 60(b)'s first five

---

1. "COBRA is an amendment to ERISA which ensures that employees who lose coverage under their company's ERISA plan do not go without health insurance before they can find suitable replacement coverage. COBRA is triggered by a

qualifying event." *Youngstown Aluminum Prod., Inc. v. Mid–West Benefit Serv., Inc.,* 91 F.3d 22, 26 (6th Cir.1996). One such triggering event is termination of employment. 29 U.S.C. § 1163(2).

clauses is present." *Hopper v. Euclid Manor Nursing Home,* 867 F.2d 291, 294 (6th Cir.1989) (citations omitted).

2. *Motion for Summary Judgment*

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A motion for summary judgment requires that the Court view the " 'inferences to be drawn from the underlying facts ... in the light most favorable to the party opposing the motion.' " *Matsushita Electric Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). Once the moving party has met its initial burden pointing out a lack of factual support for their allegations, the burden shifts to the opponent, to show that, based on the factual record presented, a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.' " *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). "The mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

**ANALYSIS**

1. *Jurisdiction*

 As an initial matter, the Court must establish whether it has jurisdiction to review these claims. Fundamental to federal court authority is the principle that federal jurisdiction is limited by the restrictions embodied in Article III of the United States Constitution. *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). For this Court to enter a binding judgment in this case, it must establish jurisdiction over the parties and over the subject matter in dispute. Subject matter jurisdiction is presumed lacking until the pleader proves otherwise. C. Wright, A. Miller & E. Cooper, Federal

Practice And Procedure § 3522, at 62. Article III, section 2 of the federal Constitution and 28 United States Code section 1331 provide a jurisdictional basis for the federal courts to adjudicate all civil claims "arising under the Constitution, laws or treaties of the United States." Cases "arise under" federal law for Article III purposes whether they are based on federal common or statutory law. *Illinois v. City of Milwaukee,* 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972).

 On occasion, Congress "explicitly direct[s] the federal courts to develop a body of common law to fill in the interstices of a statutory scheme in order to ensure national uniformity of application." *Auto Owners Ins. Co. v. Thorn Apple Valley, Inc.,* 31 F.3d 371, 374 (6th Cir.1994). ERISA presents one such occasion. *Id.* Despite this mandate, application of federal common law will only be appropriate where ERISA is either silent or ambiguous. *Weiner v. Klais and Company,* 108 F.3d 86, 92 (6th Cir.1997). Courts have upheld application of the federal common law to claims requiring the interpretation of contractual and quasi-contractual obligations under ERISA plans. *See, e.g., Provident Life & Accident Ins. Co. v. Waller,* 906 F.2d 985 (4th Cir.1990); *Whitworth Bros. Storage Co. v. Central States,* 794 F.2d 221, 235–36 (6th Cir.1986).

 In the instant case, PEC, as an ERISA plan employer, presents claims based on both subrogated and independent claims which require the interpretation of its ERISA plan in light of federal common law contract and equity principles. PEC's argument that it was not primarily liable as between the two insurance plans requires interpretation of the ERISA plan itself. Plaintiff's other arguments require the Court to determine whether to apply equitable principles of unjust enrichment in this context to advance the underlying purpose of ERISA. Accordingly, application of the federal common law is appropriate in each context.

 In addition to establishing a statutory basis for jurisdiction, the Court must also ascertain whether plaintiff's claims satis-

fy the constitutional and prudential prerequisites of the standing doctrine. Article III requires that plaintiff demonstrate: 1) "injury in fact"; 2) "a causal relationship between the injury and the challenged conduct"; and 3) "a likelihood that the injury will be redressed by a favorable decision[.]" *Northeastern Fla. Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 663, 113 S.Ct. 2297, 2302, 124 L.Ed.2d 586 (1993) (citing *Allen v. Wright*, 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984)). The Supreme Court has also articulated several prudential considerations, including the principle that a party generally may not raise the claims of third parties not before the court; rather, plaintiffs may only assert their own rights. *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

 As noted above, plaintiff's claims are based on two alternative legal theories: 1) Titan is primarily liable to Buller for his medical expenses; or 2) if Titan is not liable, PEC should receive restitution because Titan will otherwise be unjustly enriched. Both arguments allege plaintiff was injured by paying out benefits which it did not or should not have owed and that this injury was directly caused by Titan's payment of Buller's COBRA premiums. As such, these allegations clearly satisfy the first two standing requirements.

 The point of contention, here, is whether plaintiff's claims are redressable against this defendant. Plaintiff's direct claim against defendant is not based on any contractual or other legal relationship; it is instead based on equitable principles. Defendant argues that because restitution is not appropriate in this context, PEC does not have standing to sue Titan. However, the doctrine of standing only requires that plaintiff articulate a theory of relief which *if adopted* by the Court would be likely to redress plaintiff's injury. In the instant case, PEC's claim rests on principles which would, if the Court chose to apply them in this context, result in a judgment ordering restitution from defendant. While plaintiff's claim may not be viable, the allegation is sufficient to satisfy the standing requirement.

 At first blush, the admonition against allowing third-party claims also presents a problem. Plaintiff asserts not only its own direct claims based on equitable principles, but also the subrogated claims of its client, Buller, an individual not party to this suit. Subrogated claims, though based on third-party rights, are, in fact, the rights of the subrogee, the insurer. The principle of subrogation is "predicated upon the theory that the insurer ... succeeds to the right of the insured" by operation of law when the insurer has made a payment to the insured. Couch, Cyclopedia of Insurance Law §§ 61.4, 61.114 (2d Ed.1984); *see also Morris v. Crete Carrier Corp.*, 105 F.3d 279, 281 (6th Cir.1997). By virtue of this legal fiction, PEC has standing to advance any claims Buller might have against Titan. *See, e.g., Transamerica Ins. Co. v. Detroit Carpenters Health and Welfare Fund*, 904 F.2d 708 (6th Cir.1990) (applying the principles of subrogation to permit insurers to advance the claims of the insured); *Liberty Mut. Ins. Group v. Iron Workers Health*, 879 F.2d 1384 (6th Cir.1989) (same).

Having established that the Court has jurisdiction to hear plaintiff's claims, the Court will now address the merits of the parties' motions.

### 2. PEC's Claims

Plaintiff presents the following theories of recovery: 1) since no one but the insured could elect to extend his benefits plan under COBRA, no enforceable contract was formed between PEC and Buller and consequently, Titan, as the only insurer liable to Buller, must reimburse PEC; 2) if an enforceable contract was formed between PEC and Buller, Titan is primarily liable for payment of Buller's health benefits as between the two insurers; and 3) regardless of the status of the contract between PEC and Buller, Titan should reimburse PEC under equitable principles, because Titan acted wrongfully in paying Buller's premium and would be unjustly enriched if the Court did not order restitution.

### Was an enforceable contract formed?

 Though PEC does not explicitly argue that a contract was never formed or is

unenforceable for some reason, its argument that Titan could not have extended Buller's benefits for him under the terms of the PEC plan is only of consequence if it prevented formation of an enforceable contract. Without a Buller–PEC contract, Titan would clearly be the only insurer liable for Buller's expenses, and PEC would have a subrogated right to reimbursement. PEC, however, states unequivocally in its first amended complaint that a contract existed between PEC and Buller on July 3, 1994, the day Buller was involved in the accident. Since plaintiff has never amended its complaint to alter that statement, it cannot now argue that no such contract was formed. Consequently, whether a contract was formed between Titan and PEC with Buller as a third-party beneficiary or between PEC and Buller with Titan acting as Buller's agent, is irrelevant.

Despite its concession, however, PEC asserts that it is not liable because the ERISA Plan Administrator determined that only a plan participant or beneficiary may make COBRA payments to extend coverage. Plaintiff continues that because under ERISA the Court must defer to the Plan Administrator's interpretation of the Plan, the continuation of benefits could not have been effectuated by Titan. While PEC is correct that Plan Administrators are entitled to broad discretion to interpret their own plans, this fact does not effect the Court's determination here. PEC was free to interpret its own Plan as it saw fit and to reject Titan's offer of payment. It did not. On the contrary, it accepted payment from Titan and performed on the contract. Moreover, even if the Plan Administrator's interpretation could retroactively bar contract formation, PEC's admission that a contract existed on July 3, 1994, precludes it from making this argument.

Finding that a contract was formed does not end the inquiry, however. The Court notes initially that, because the underlying purpose of ERISA is "to protect the interests of participants in employee benefits plans and their beneficiaries[,]" 29 U.S.C. § 1001(b), the Court must inquire whether this contract is unenforceable as against public policy. In the instant case, an outside insurer has acted to cause an ERISA plan to make payments it would not otherwise have been required to make. If the Court finds that such activity threatens the financial integrity of the Plan or ERISA plans generally, or in some other way threatens the interests of the plan participants and beneficiaries, the Court could hold the contract unenforceable. This is not such a case, however. Because PEC has not shown how this contract threatens the interests of the insured, the Court can find no justification for ruling in plaintiff's favor. Buller has remained fully covered and received his benefits. PEC's plan has only had to pay benefits which PEC impliedly admits it would have been responsible for if Buller himself had paid his premiums. Furthermore, since PEC is, and always has been, free to reject offers such as Titan's, the Court's ruling in defendant's favor will not cause a general shift in liability from no-fault insurers to ERISA insurers. The Court, therefore, holds that PEC is bound by an enforceable contract to provide benefits to Buller.

### Is Titan primarily liable?

Plaintiff also contends that, if both Titan and PEC owe Buller benefits, Titan is primarily liable because the Third–Party Liability and Coordination Clauses in PEC's Plan so indicate. Both of these arguments were evaluated and rejected by the Court in its previous opinion filed July 18, 1996. Plaintiff has merely reiterated its previous arguments without providing the Court with any basis under Rule 60(b), or any other rule, to retract its judgment. Consequently, plaintiff's motion for reconsideration is denied and the Court's previous holding finding PEC primarily liable stands.

### Was Titan unjustly enriched?

Plaintiff's final argument is based on the equitable principle of unjust enrichment. Where there is no contractual relationship between parties, quasi-contractual relief requires that: (1) plaintiff had a reasonable expectation of reimbursement; (2) defendant should reasonably have expected to reimburse the plan; or (3) society's reasonable expectation of person and property would be defeated by nonpayment. *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 993

**1112**

(4th Cir.1990) (citing CORBIN ON CONTRACTS § 19A, at 50 (Supp.1989)); *Redall Industries, Inc., v. Wiegand,* 870 F.Supp. 175 (E.D.Mich. 1994).

■ Plaintiff has not demonstrated the existence of a dispute as to this issue. Reviewing each potential ground for liability in turn, the Court first finds that PEC could not have reasonably expected reimbursement for payment of Buller's benefits because: 1) it was aware that it owed contractual obligations to Buller when it paid out the benefits, and 2) it was primarily liable as between the two insurers. Second, the Court acknowledges that Titan had no reason to expect to reimburse PEC, particularly since it paid value in exchange for PEC's promise to pay Buller's benefits. Finally, having determined that PEC is bound by an enforceable contract, the Court finds that reimbursement of PEC's expenditures would run directly contrary to society's reasonable expectation that parties will be required to perform their explicit contractual obligations. Therefore, PEC is not entitled to restitution.[2]

## CONCLUSION

For the foregoing reasons, plaintiff's motion for reconsideration is denied. There being no basis for recovery, defendant's second motion for summary judgment is granted.

---

**2.** Plaintiff cites *Provident Life & Accident Insurance Company v. Waller,* 906 F.2d 985 (4th Cir. 1990), to support its claim. However, unlike that case, PEC's claim does not present the "archetypal unjust enrichment scenario." *See id.* at 993. In *Waller,* equitable principles were applied to prevent an insured from receiving double recovery for his medical expenses, once from his ERISA insurer and once from a third party. *Id.* In the instant case, Buller has been paid once; PEC has performed its contractual obligation once; and Titan has only received a benefit for which it paid value. Therefore, while *Waller* supports the existence of a cause of action for unjust enrichment to vindicate rights under ERISA, it is factually distinguishable from the instant case.