**MCI TELECOMMUNICATIONS CORPORATION, A Delaware corporation, and MCImetro Access Transmission Services, Inc., A Delaware Corporation, Plaintiffs,**

v.

**BELLSOUTH TELECOMMUNICATIONS, INC., A Georgia Corporation; the Kentucky Public Service Commission; and Linda K. Breathitt, Edward J. Holmes, and Dr. B.J. Helton, in their official capacities as Commissioners of the Kentucky Public Service Commission, Defendants.**

Civil Action No. 97–76.

United States District Court, E.D. Kentucky.

June 29, 1998.

Henry S. Alford, C. Hatfield, Middleton & Reutlinger, Louisville, KY, Thomas F. O'Neil, III, William Single, IV, Matthew B. Pachman, MCI Telecommunication Corporation, Washington, DC, Donald B. Verrilli, Jr., Maureen F. Del Duca, Thomas J. Perrelli, Washington, DC, for MCI Telecommunications Corporation.

C. Hatfield, Middleton & Reutlinger, Louisville, KY, Thomas F. O'Neil, III, William Single, IV, Matthew B. Pachman, MCI Telecommunication Corporation, Washington, DC, Donald B. Verrilli, Jr., Maureen F. Del Duca, Thomas J. Perrelli, Washington, DC, for MCImetro Access Transmission Services.

Mark R. Overstreet, Bruce F. Clark, Stites & Harbison, Frankfort, KY, Dorothy J. Chambers, Creighton E. Mershon, Sr., Bell-South Telecommunications, Inc., Louisville, KY, Sean A. Lev, Kellogg, Huber, Hanse, Todd & Evans, P.L.L.C., Washington, DC, William Barfield, R. Douglas Lackey, Thomas B. Alexander, BellSouth Telecommunications, Atlanta, GA, for Bellsouth Telecommunications, Inc.

Deborah Tully Eversole, Amy E. Dougherty, William L. Willis, Public Service Commission of Kentucky, Frankfort, KY, for Kentucky Public Service Commission.

Deborah Tully Eversole, Amy E. Dougherty, William L. Willis, Public Service of Kentucky, for Linda Breathitt, Edward J. Holmes, and Dr. B.J. Helton.

### MEMORANDUM OPINION & ORDER

HOOD, District Judge.

This matter is before the Court on the motion to dismiss [Record No. 8] by the defendants, the Kentucky Public Service Commission, Linda K. Breathitt, Edward J. Holmes, and Dr. B.J. Helton (collectively referred to as the "PSC"). The plaintiff, MCI Telecommunications Corporation and MCImetro Access Transmission Services, Inc. (collectively referred to as "MCI") has responded. The defendant, BellSouth Telecommunications, Inc. ("BellSouth") has also responded.

Being fully briefed, the motion is ripe for consideration. Having reviewed the parties' arguments, the Court finds that this matter need not be dismissed. Consistent with such a determination, the Court makes the following findings of facts and conclusions of law.

### FINDINGS OF FACT

MCI brings this action under section 252(e)(6) of the Telecommunications Act of 1996, 47 U.S.C. § 151 *et seq.* ("Act"). The Act dissolved the monopolies originally regulated by the States and opened up the local telephone market for competition. In so doing, Congress set forth terms under which the existing local telephone companies, known as incumbent local exchange carriers (ILEC), are required to sell parts of their networks to their competitors so as to allow these new telephone companies to get into the business quickly. However, Congress ensured that the ILECs would be compensated for the sharing of their networks. Consequently, Congress set forth a process which would enable the ILEC and the competitor to reach a reasonable and fair agreement on purchases of networks and compensation; the process is set forth in section 252 of the Act. *See* 47 U.S.C. § 252.

Section 252 sets forth several distinct ways in which an ILEC and a competitor can reach an interconnection agreement. First, the ILEC and the competitor may engage in voluntary negotiations. Second, if after negotiating the parties cannot resolve certain terms within the agreement, then either party may petition the state commission to arbitrate those terms. Third, the parties must then submit an interconnection agreement to the state commission and the state commission must approve or reject the interconnection agreement. Fourth, if either party is not satisfied with the state commission's determinations, a suit may be filed in federal district court, seeking review of the state commission's decision.

Congress has provided these stages in the process to ensure that the terms of the interconnection agreement comply with the Act's provisions. It is this very process which is central to the matter before the Court.

In the case at hand, BellSouth, the ILEC, has engaged in negotiations with MCI, with respect to an interconnection agreement ("agreement"). However, during the negotiations the parties could not resolve certain issues; thus, on September 3, 1996, pursuant to § 252, MCI petitioned the PSC to arbitrate these unresolved issues.

On November 7–8, 1996, a hearing was held before the PSC. On December 20, 1996, the PSC issued its arbitration order, ordering the parties to file a final agreement with the PSC within sixty days. The PSC did not set the final rates for the agreement in its order; instead, it required BellSouth to file additional costs studies on the unbundled network elements so that the final rates could be set.

The parties were unable to execute such agreement within the time frame set by the PSC's order. Instead, MCI moved for reconsideration and clarification of the PSC's order, asking for establishment of a separate, additional docket to consider costs and rates. The PSC, however, refused to establish a separate docket because the Act sets forth the appropriate methodology for determining the rates to be set.

After issuing such order, MCI and BellSouth still could not agree on certain items to be put forth in the agreement. MCI, thus, filed a list of such items with the PSC, and the PSC resolved those issues for the parties, even supplying specific contract language for them. Such did not end the process.

Again, MCI petitioned the PSC to establish a separate docket for the costs and rates issue. The PSC again refused to do so, but did set a hearing to consider such additional costs studies submitted by BellSouth. The hearing was eventually canceled and the PSC "set final rates based on methodologies it had determined pursuant to evidence presented within the statutory timeframe." PSC Memorandum in Support of Motion to Dismiss at p. 4.

On August 13, 1997, MCI and BellSouth finally filed their interconnection agreement based on the rates set forth in the PSC's order. Such agreement was approved by the PSC on August 21, 1997. MCI then brought this suit pursuant to § 252(e)(6), seeking declaratory and injunctive relief.

The PSC now moves the Court to dismiss MCI's complaint on the grounds that this Court does not have jurisdiction to review the PSC's arbitration order. The PSC argues that the suit is barred by the Eleventh Amendment, and thus MCI cannot sue the PSC in federal court. The PSC also argues that this action is barred by the Tenth Amendment and Guarantee Clause of the United States Constitution. Lastly, the PSC submits that MCI has not presented a viable due process claim, and thus even if the Tenth and Eleventh Amendments do not bar this suit, the suit should be dismissed for failure to state a claim.

In opposition, MCI argues that this action is not barred by the Eleventh Amendment, as the PSC has waived its sovereign immunity. Moreover, MCI submits that this action is for declaratory and injunctive relief, and thus under *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) the Court has jurisdiction to hear this matter. MCI further submits that the Tenth Amendment does not bar this claim because Congress had the power to enact this statute under the Commerce Clause. Lastly, MCI maintains

that it has set forth a viable claim for which relief can be granted; MCI has a property interest in the interconnection agreement and the rates set forth in it, and the Commission's act of setting the rates without a hearing on such rates has denied it due process under the law.

Notably, the defendant BellSouth has responded to the PSC's motion to dismiss. BellSouth agrees with MCI that this action is not barred by either the Eleventh Amendment or the Tenth Amendment. However, BellSouth agrees with the PSC that this matter should be dismissed in that MCI has failed to set forth a viable due process claim.

### CONCLUSIONS OF LAW

MCI has the burden of proving that the Court has jurisdiction over this matter. *Madison–Hughes v. Shalala,* 80 F.3d 1121, 1130 (6th Cir.1996). MCI has met that burden.

#### I. The State Has Waived Its Sovereign Immunity

■■■ The U.S. Supreme Court has stated that a state can consent to suit, and thus, effectively nullify the Eleventh Amendment's prohibition to allow a state to be sued in federal court. *See Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 237–38, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). Although the Supreme Court has stated that in most instances the waiver of a state's sovereign immunity must be by express language, in limited circumstances the state can waive its sovereign immunity by an "unequivocal indication" that it intends to consent to suit. *Id.* n. 1 & 3150. Such situation occurs where the state engages in an act which is regulated by a federal law that mandates the state be amenable to suit if it chooses to engage in such activity. *See Parden v. Terminal Ry.,* 377 U.S. 184, 192, 195–196, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), *overruled on other grounds by, Welch v. Texas Dep't of Highways & Pub. Transp.,* 483 U.S. 468, 477–78, 107 S.Ct. 2941, 2948, 97 L.Ed.2d 389 (1987)

(overruling the *Parden* Court's determination as to when Congress can abrogate the Eleventh Amendment); *see also Atascadero State Hosp.,* 105 S.Ct. at 3149–50 (stating that even if the act in question did condition participation on the state's consent to waive its immunity, "there was no indication that the State of California consented to federal jurisdiction"); *cf. Edelman v. Jordan,* 415 U.S. 651, 672–73, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (distinguishing the case from *Parden* and holding that constructive consent was not viable). Such is the case here.

■■■ 47 U.S.C. § 252(e)(6) (emphasis added) states,

> In any case in which a State commission makes a determination under this section, *any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251* of this title and this section.

Thus, by participating in the process, when the PSC need not do so, *see* 47 U.S.C. § 252(e)(5), the PSC has consented to suit under the Act. *See U.S. West Communications, Inc. v. Public Serv. Comm'n,* 991 F.Supp. 1299, 1301–02 (D.Utah 1998); *US West Communications, Inc. v. TCG Seattle,* 971 F.Supp. 1365, 1369–70 (W.D.Wash.1997); *but see College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 948 F.Supp. 400, 418–20 (D.N.J.1996) (arguing that *Seminole Tribe* overruled *Parden* ), *aff'd,* 131 F.3d 353 (3d Cir.1997).[1] Accordingly, the Court finds that the PSC gave an "unequivocal indication" that it consented to suit, and the State's sovereign immunity has been waived.

#### II. Congress Has Not Abrogated the State's Sovereign Immunity, but Individual Commissioner's Can be Sued Pursuant to Ex Parte Young

■■■ Assuming arguendo that the State had not waived its sovereign immunity, the PSC is correct that Congress does not have

---

1. The Court notes, however, that *Seminole Tribe* specifically did not address the waiver issue, as the Supreme Court stated at the outset of the case that "it is undisputed that Florida has not consented to suit." 116 S.Ct. at 1123. The Supreme Court then stated that the issues it

would address in turn was (1) whether the Act abrogated the States I sovereign immunity and (2) whether the suit could go forward under the *Ex Parte Young* theory. *Id.* Hence, the Court finds the district court's holding to be faulty.

the power to abrogate its sovereign immunity under the Act. The Act was passed pursuant to Congress' power to legislate under the Commerce Clause, and based on *Seminole Tribe v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), Congress cannot use the Commerce Clause to abrogate a state's power. *Id.* at 1125–32; *Wilson–Jones v. Caviness*, 99 F.3d 203, 207 (6th Cir.1996). Such can only be done through Congress' power under the Fourteenth Amendment. *Seminole Tribe*, 116 S.Ct. at 1125; *Wilson–Jones*, 99 F.3d at 208. Thus, if the state had not waived its sovereign immunity, which the Court finds that it did, then the state would be immune from suit under this Act.

Nevertheless, the individual commissioners would be amenable to suit under the doctrine of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). While it is true that the Supreme Court in *Seminole Tribe* held that the doctrine of *Ex Parte Young* could not be used to enforce the statute against an individual official, the Supreme court in *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), acknowledged the "continuing validity of the *Ex Parte Young* doctrine." *Id.* at 2034. In fact, the Supreme Court emphasized,

> Our precedents do teach us, nevertheless, that where prospective relief is sought against individual state officers in a federal forum based-on a federal right, the Eleventh Amendment, in most cases, is not a bar. Indeed, since *Edelman* we have consistently allowed suits seeking prospective injunctive relief based on federal violations to proceed.

*Id.* at 2038 (internal citations omitted).[2]

While the PSC attempts to characterize this suit as one similar to *Seminole Tribe*,

the Court does not find this case to fit within that context. Whereas the statute at issue in *Seminole Tribe* had created a remedial scheme which provided for a limited means of enforcement, the Act at hand does not provide for a detailed remedial scheme. Moreover, the remedy which is given comports with the intentions of *Ex Parte Young* (which required state officials to conform their actions to comply with the federal law at hand); indeed, section 252(e)(6) specifies that the very reason for bringing the action in federal court is to ensure that the agreement meets the requirements of the Act.[3] *See Natural Resources Defense Council v. California Dep't of Transp.*, 96 F.3d 420, 424 (9th Cir.1996). Thus, the Court finds that although Congress has not abrogated the State's sovereign immunity under the Act, the state officials may be sued for prospective relief under the doctrine of *Ex Parte Young*.[4] *See Wilson–Jones*, 99 F.3d at 211; *see also Strahan v. Coxe*, 939 F.Supp. 963, 982 & n. 29 (D.Mass.1996), *aff'd in part and vacated in part*, 127 F.3d 155, 166–67 (1997) (upholding the district court's ability to enjoin the Commonwealth under *Ex Parte Young*).

III. *Neither The Tenth Amendment Nor The Guarantee Clause Is A Bar To The Act*

█ As the PSC points out, the Tenth Amendment reserves to the states the powers not delegated to the United States by the Constitution. In upholding the Tenth Amendment, the Supreme Court has clearly stated that Congress may not pass legislation which requires a state to regulate or enforce a federal statute. *See New York v. United*

---

**2.** The Court went on to state,

> Last Term, however, we did not allow a suit raising a federal question to proceed based on Congress' provision of an alternative review mechanism. Whether the presumption *in favor* of federal-court jurisdiction in this type of case is controlling will depend upon the particular context.

*Coeur d'Alene Tribe*, 117 S.Ct. at 2038.

**3.** The PSC attempts to include within the remedial scheme § 252(e)(5) The Court, however, does not find that such section applies to remedies for

an aggrieved party. Instead, § 252(e)(5) is merely the Tenth Amendment language which gives the State the choice to perform arbitration under the Act or allow the federal government to preempt the State commission's responsibilities under the Act.

**4.** "An allegation of an on-going violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction." *Coeur d'Alene Tribe*, 521 U.S. at ——, 117 S.Ct. at 2040.

*States,* 505 U.S. 144, 167–69, 112 S.Ct. 2408, 2424, 120 L.Ed.2d 120 (1992); *see also Printz v. United States,* —— U.S. ——, ——, 117 S.Ct. 2365, 2380, 138 L.Ed.2d 914 (1997). The Supreme Court has also clearly stated, however, that Congress may properly enact legislation which requires the state to either regulate in a certain area or opt out and allow the federal government to preempt that area. Such choice is consistent with Congress' power and does not violate the Tenth Amendment.

> [W]here Congress has the authority to regulate private activity under the Commerce Clause, we have recognized Congress' power to offer States the choice of regulating that activity according to federal standards or having state law pre-empted by federal regulation.
>
> . . . . .
>
> By [the above method], as by any other permissible method of encouraging a State to conform to federal policy choices, the residents of the State retain the ultimate decision as to whether or not the State will comply. If a State's citizens view federal policy as sufficiently contrary to local interests, they may elect to decline a federal grant. If state residents would prefer their government to devote its attention and resources to problems other than those deemed important by Congress, they may choose to have the Federal Government rather than the State bear the expense of a federally mandated regulatory program, and they may continue to supplement that program to the extent state law is not pre-empted. Where Congress encourages state regulation rather than compelling it, state governments remain responsive to the local electorate's preferences; state officials remain accountable to the people.

*New York,* 112 S.Ct. at 2424 (internal citations omitted).

■ Because the Act allows the State to either participate in the regulation of the telecommunications systems or to be preempted in that filed of regulation, the Act is a permissible exercise of Congress' power. Hence, the Act does not violate the Tenth Amendment and does not bar this suit from being brought by MCI.

■ Likewise, the Court does not find that the Guarantee Clause bars this action. The Supreme Court has questioned whether the Guarantee Clause was meant to be used as a source for litigation. *See New York,* 112 S.Ct. at 2432. Regardless, the Court finds that the Act does not violate the Guarantee Clause; the Act does not "deny [the] State a republican form of government." *See id.* at 2433.

### IV. *MCI Has Alleged A Viable Due Process Claim.*

■ To allege a viable due process claim, MCI must show either a liberty interest or property interest and some deprivation. *See Mertik v. Blalock,* 983 F.2d 1353, 1359 (6th Cir.1993) ("In order to maintain her due process claims, Mertik must allege the existence of some facts which, if proven, would establish that defendants deprived her of a constitutionally protected property or liberty interest.").

For MCI to have been deprived of some sort of property interest, it would have to show some entitlement. An " 'abstract need or desire' " is not enough. " '[It] must have more than a unilateral expectation....' " *Id.* (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

■ MCI can show such entitlement. MCI has an entitlement to the proper setting of telecommunication rates, and thus it has a property interest in such rates. Accordingly, MCI is entitled to proper due process under the law for setting such rates. *See Charles v. Baesler,* 910 F.2d 1349, 1353 (6th Cir.1990) (stating that state-created contract rights are assuredly protected by procedural due process).

Taking the facts in a light most favorable to the plaintiff, which the Court must do in addressing a motion to dismiss, *see In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993) (noting that, in deciding a motion made under Fed.R.Civ.P. 12(b)(6), the Court must view the facts in the light most favorable to the plaintiff), this Court finds

that MCI has set forth sufficient facts to state a viable procedural due process claim.

MCI has alleged that it was not given an opportunity to be heard with respect to the interconnection and unbundled network rates the PSC adopted pursuant to BellSouth's costs studies. The opportunity to be heard is a cornerstone of due process. Thus, although the PSC and BellSouth argue that MCI was given all the process that was due to it, the Court finds that MCI's allegation states a sufficient claim at this time. Accordingly, because MCI has alleged that the PSC's failure to provide a hearing deprived it of its due process of law under the Act, the Court finds that this action should not be dismissed for failure to state a claim. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (stating that a court may dismiss a complaint only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.").

### *SUMMATION*

Having concluded, then, that this matter is not barred by the Eleventh Amendment, the Court has subject matter jurisdiction over this matter. Moreover, the Court finds that the Act does not violate the Tenth Amendment and Guarantee Clause, and that MCI has stated a claim for which relief can be granted. Accordingly, the Court shall not dismiss the action.

Having so stated,

**IT IS ORDERED** that the Commission's motion to dismiss [Record No. 8] be, and the same hereby is, **DENIED.**