**MICHIGAN BELL TELEPHONE CO.,**
d/b/a Ameritech Michigan, Inc.,
Plaintiff,

v.

**MFS INTELENET OF MICHIGAN, INC.,**
TCG Detroit, Brooks Fiber Communications of Michigan, Inc., MCI Telecommunications Corp., MCIMetro Access Transmission Services, Inc., AT & T Communications of Michigan, Inc., BRE Communications, LLC, and John G. Strand, John C. Shea, and David A. Svanda, Commissioners of the Michigan Public Service Commission, in their official capacities, Defendants.

No. 5:98 CV 18.

United States District Court,
W.D. Michigan,
Southern Division.

July 21, 1998.

Theodore A. Livingston, Mayer, Brown & Platt, Chicago, IL, Michael A. Holmes, Ameritech Michigan, Detroit, MI, Edward R. Becker, John M. Dempsey, Dickinson Wright P.L.L.C., Lansing, MI, for Plaintiff.

Richard M. Rindler, Swidler & Berlin, Washington, DC, William R. Ralls, Butzel Long, Norman C. Witte, Lansing, MI, for Defendant MFS Intelenet of Michigan, Inc.

Douglas W. Trabaris, Teleport Communications Group, Inc., Chicago, IL, Roderick S. Coy, Stephen J. Videto, Clark, Hill, P.L.C., Lansing, MI, for Defendant TCG Detroit.

Lori M. Silsbury, Dykema Gossett, PLLC, Detroit, MI, Lori M. Silsbury, Albert Ernst, Dykema Gossett, Lansing, MI, for Defendants MCI Telecommunications Corp., MCIMetro Access Transmission Services, Inc.

Arthur J. LeVasseur, George Hogg, Jr., Sidney M. Berman, Fischer, Franklin & Ford, Detroit, MI, for AT&T Communications of Michigan, Inc.

Richard C. Gould, Grandville, MI, for Defendant BRE Communications, L.L.C.

David M. Gadaleto, Asst. Atty. General, Frank J. Kelley, Attorney General, Lansing, MI, Don L. Keskey, Asst. Atty. General, David A. Voges, Asst. Atty. Gen., Frank J. Kelley, Attorney General, Lansing, MI, for Defendants John G. Strand, John C. Shea, David A. Svanda.

### OPINION

ENSLEN, Chief Judge.

This matter is before the Court on Defendant John Strand, John Shea and David Svanda's Motion to Dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff Michigan Bell Telephone Company, d/b/a Ameritech Michigan, Inc. [hereinafter Ameritech], filed this action against the Commissioners of the Michigan Public Service Commission (MPSC) and competing local telecommunications carriers pursuant to the federal Telecommunications Act of 1996. Alleging violations of both state and federal law, Plaintiff seeks declaratory and injunctive relief to prevent enforcement of an Order issued by the Defendant Commissioners interpreting interconnection agreements entered into by Plaintiff Ameritech and the Defendant telecommunications carriers. The Defendant Commissioners argue that: 1) the Court lacks jurisdiction to proceed; 2) the Eleventh Amendment bars suit against them as state officials; 3) whether or not jurisdiction exists, the Court must abstain from rendering judgment; and 4) the Johnson Act prohibits the Court from enjoining the agency. Both the Plaintiff and Defendant telecommunications carriers oppose the Commissioners' contentions. Upon review, the Motion to Dismiss is denied.

## I. BACKGROUND

The Telecommunications Act of 1996, Pub.L. 104–104, 1996 U.S.C.C.A.N. (110 Stat. 56) 10 (codified as amended in scattered sections of Title 47 of the United States Code),[1] was designed "to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies" by promoting competition and reducing regulation of the telecommunications industry. 1996 U.S.C.C.A.N. at 11. One way in which the Act seeks to accomplish these goals is by the forced deregulation of state-sanctioned local telecommunications monopolies. 47 U.S.C. ch. 5, subch. II, Pt. II (entitled "Development of Competitive Markets"). "In providing local telephone service, telephone companies have historically been protected from competition by State and local government barriers to entry." 1996 U.S.C.C.A.N. at 13. As a result, until passage of Act, the providers of local telephone service (referred to as local exchange companies or LECs) "maintain[ed] bottleneck control over the essential facilities

---

1. The Telecommunications Act of 1996 amended the Communications Act of 1934, 47 U.S.C. § 151 et seq. See the notes accompanying 47 U.S.C. § 609 for a listing of the specific sections affected.

needed for the provision of local telephone service." *Id.* The Act seeks to break that control by requiring existing LECs to interconnect with competing LECs. *Id.; Iowa Utils. Bd. v. FCC*, 120 F.3d 753 (8th Cir. 1997).

> Specifically, the Act forces an incumbent LEC (1) to permit a requesting new entrant in the incumbent LEC's local market to interconnect with the incumbent LEC's existing local network ... (interconnection); (2) to provide its competing telecommunications carriers with access to individual elements of the incumbent LECs network on an unbundled basis (unbundled access); and (3) to sell to its competing telecommunications carriers, at wholesale rates, any telecommunications service that the incumbent LEC provides to its customers at retail rates, in order to allow the competing carriers to resell their services (resale).

*Iowa Utils. Bd.*, 120 F.3d at 791 (citing 47 U.S.C. § 251(c)(2)-(4)). The Act also requires that the incumbent and competing LECs enter into interconnection agreements fulfilling the duties described in section 251 by following the procedures set forth in section 252. § 251(c)(1).

Section 252 articulates a four-step process to guide the parties toward an interconnection agreement which adheres to the requirements of the Act. First, section 252(a)(1) provides for the parties to attempt to reach an agreement through negotiation or mediation. If no agreement can be reached voluntarily, section 252(b) and (c) set out the specific standards and procedures by which either party may request that the state commission arbitrate any open issues. Once an agreement has been executed, it must be submitted to the state commission for approval pursuant to section 252(e). The state commission may only reject an agreement under certain limited circumstances delineated in section 252(e)(2). Finally, review of any determination made by the state commission approving or rejecting an agreement under this section lies exclusively within the jurisdiction of the federal district court. § 252(e)(4) & (6). If, however, the state commission elects not to participate in this process or fails to act within 90 days to resolve a matter arising under section 252, the Federal Communications Commission (FCC) is granted preemptive jurisdiction by section 252(e)(5).

Ameritech brings this suit pursuant to section 252(e)(6), alleging in part that the Order issued by the Commissioners interprets the interconnection agreements between itself and the Defendant competing LECs in a manner which violates federal law. The case arose when Ameritech ceased paying reciprocal compensation[2] to the Defendant competing LECs for calls made to Internet Service Providers (ISPs).[3] Contending that calls made to ISPs are not local calls, Ameritech asserted that it was not required to pay such compensation under either the terms of the agreements or under federal law. Several of the competing LECs then filed complaints with the state commission[4] seeking an Order requiring Ameritech to pay both past and future charges for calls made to the ISPs. On January 28, 1998, interpreting the terms of the various interconnection agreements, the MPSC issued an Order ruling in favor of the competing LECs and requiring, among other things, that Ameritech pay more than $6 million in back charges within 10 days, and pay all future reciprocal compensation for the disputed calls.

---

**2.** Reciprocal Compensation is the principle by which interconnected telecommunications companies compensate one another for calls their customers initiate but which must be terminated by the competitor telecommunications company.

**3.** Internet Service Providers "typically offer modem telephone access to a computer or computer network linked to the Internet. Many such providers ... are commercial entities offering Internet access for a monthly or hourly fee." *American Libraries Ass'n v. Pataki*, 969 F.Supp. 160, 165 (S.D.N.Y.1997).

**4.** MSF Intelenet of Michigan, Inc., TCG Detroit, MCI Telecomm. Corp. MCIMetro Access Transmission Serv., Inc. and Brooks Fiber Comm. of Michigan, Inc. filed the original complaints with the MPSC. Subsequently, the cases were consolidated and AT & T Comm. of Michigan, Inc. and BRE Comm.; LLC, d/b/a/ Phone Michigan, were granted intervenor status. Together these companies comprise the "Defendant telecommunications carriers" or "Defendant competing LECs."

On February 2, 1998, Ameritech filed a motion to stay further proceedings with the MPSC while it sought judicial review of the January 28 Order. Ameritech then filed this action on February 6, 1998, nine days after the MPSC Order was issued, against both the competing LECs and the MPSC Commissioners who entered the Order. Plaintiff alleges that: 1) the MPSC Commissioners incorrectly interpreted the terms of the interconnection agreements in light of federal law; 2) the interconnection agreements as interpreted by the MPSC in the January 28 Order violate the federal regulations enacted pursuant to section 251; 3) the MPSC has no jurisdiction to regulate the calls in question because they are interstate calls and therefore can only be regulated by the FCC; 4) the MPSC award of attorney's fees is without statutory basis; and 5) the MPSC Order is in violation of Michigan law. In the instant Motion to Dismiss, the Defendant Commissioners argue that this Court does not have jurisdiction to review the January 28 Order issued by the MPSC under either section 252(e)(6) or 28 United States Code section 1331. Furthermore, the Defendant Commissioners argue that, if the Court finds that it does have subject matter jurisdiction over this action, the suit is barred by either: 1) the Eleventh Amendment; 2) the Abstention doctrines articulated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Burford v. Sun Oil Company*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); or 3) the Johnson Act, 28 U.S.C. § 1342. Both Plaintiff Ameritech and the Defendant competing LECs respond that, because this action questions whether an interconnection agreement entered into pursuant to the Telecommunications Act is in violation of federal law, this Court does in fact have jurisdiction under both section 252(e)(6) and 28 U.S.C. § 1331. Indeed, it has exclusive jurisdiction under the Act to review at least one of the claims and none of the grounds presented serve as a basis for dismissal of this case.

## II. STANDARD

### A. *Rule 12(b)(1)*

■ The Sixth Circuit has adopted two standards of dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990). A facial attack merely questions the sufficiency of the pleading. In that context, the Court will utilize the standard applied to Rule 12(b)(6) motions. On the other hand, where a court reviews a complaint under a factual attack, no presumptive truthfulness applies to the factual allegations. In such cases, the Court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *Fairport Int'l Exploration, Inc. v. Shipwrecked Vessel Known as the Captain Lawrence*, 105 F.3d 1078, 1081 (6th Cir.1997). In the instant case, Defendants' Motion to Dismiss falls within the first category of Rule 12(b)(1) motions. Therefore, this Court will apply a 12(b)(6)-type standard to the 12(b)(1) motion.

### B. *Rule 12(b)(6)*

■ Under Rule 12(b)(6), a complaint may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." The complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. The Court, however, need not accept as true legal conclusions or unwarranted factual inferences. *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir.1998). The purpose of this motion is to determine whether plaintiff has stated a claim upon which relief may be granted.

## III. ANALYSIS

### A. *Subject Matter Jurisdiction*

■ Fundamental to federal court authority is the principle that federal jurisdiction is limited by the restrictions embodied in Article III of the United States Constitution. *Plastic Engineered Components, Inc. v. Titan Indemnity Co.*, 974 F.Supp. 1106, 1109 (W.D.Mich.1997) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)). Consequently, whenever it appears by suggestion of the parties or otherwise that the Court

lacks jurisdiction over the subject matter, the Court is required to dismiss the action. FED. R. CIV. PRO. 12(h)(3). Furthermore, subject matter jurisdiction is presumed lacking until the pleader provides otherwise. *Plastic Engineered Components, Inc.*, 974 F.Supp. at 1109. *See* FED. R. CIV. PRO. 8(a)(1).

Plaintiff alleges that jurisdiction to hear this matter is specifically provided by section 252(e)(6) of the Act. Section 252(e)(6) provides in pertinent part:

> In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

In the instant case, Plaintiff Ameritech alleges that an Order rendered by the Commissioners involving an interconnection agreement created under, and indeed mandated by, this subpart of the Act, is in violation of the Act. Arguing that the Order is a determination within the meaning of 252(e)(6), Plaintiff asserts jurisdiction is proper.

In their motion, the Commissioners argue that, because the MPSC Order involves the interpretation and enforcement of an interconnection agreement, rather than its approval or rejection, this Court is without jurisdiction to proceed. Looking to recent case law interpreting the term "determination" in the context of section 252(e)(6), the Movants assert that the term is limited to those decisions in which the State commission approves or rejects the agreement. Neither the reasoning of those cases nor the structure of the statute support the Commissioners' assertion, however. First, the line of cases to which the Commissioners cite confronts a profoundly different legal question. For example, in *GTE North v. Strand*, No. 5:97CV01, 1997 WL 811422 (W.D.Mich.), Judge Robert Holmes Bell was called upon to decide whether the Court had jurisdiction to review an MPSC decision arbitrating certain aspects of an interconnection agreement which had not yet been submitted to the state commission for final approval. Like every other federal court confronting the question, after reviewing the structure of the Act, Judge Bell held that the Court had no jurisdiction to review MPSC decisions arising during the § 252 process until *after* the interconnection agreement had become final by way of commission approval or rejection. *See, e.g., GTE Southwest, Inc. v. Graves*, 989 F.Supp. 1148, 1150 (W.D.Okla.1997); *GTE North Inc. v. Glazer*, 989 F.Supp. 922 (N.D.Ohio 1997); *GTE Northwest, Inc. v. Nelson*, 969 F.Supp. 654 (D.Wash.1997); *GTE Florida, Inc. v. Johnson*, 964 F.Supp. 333 (N.D.Fla.1997); *GTE South Inc. v. Breathitt*, 963 F.Supp. 610 (E.D.Ky.1997); *GTE South Inc. v. Morrison*, 957 F.Supp. 800 (E.D.Va.1997); *Contel of Minnesota, Inc. v. Jacobs*, No. 97–169, 1997 WL 809628 (D.Minn. May 30, 1997). In the instant case, the Order in question involves an agreement which has already received final approval. Consequently, these cases provide no support for the Commissioners' assertion that Plaintiff's claims should be dismissed.

■ Furthermore, consideration of the statutory scheme demonstrates that permitting state court review of this type of Order would directly contravene the intent of Congress. The Court's ultimate purpose in interpreting a statute is "to give effect to the intent of Congress[.]" *Cummings v. West*, 136 F.3d 1468, 1472 (Fed.Cir.1998) (citing *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)). To accomplish that goal, the Court must look "not only [to] the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990)). Thus, the Court must view each individual term as part of the entire statutory scheme so as not to frustrate the purpose Congress sought to achieve.

Reviewing this subpart of the Act as a whole,[5] the Court notes that Congress has

---

**5.** 47 U.S.C. ch. 5, subch. II, Pt. II (entitled "Development of Competitive Markets") (encompassing 47 U.S.C. §§ 251–261).

created a unique framework which, while inviting state commissions to arbitrate and approve interconnection agreements, retains exclusive jurisdiction within the federal courts to ensure that those agreements meet federal requirements. *See Michigan Bell Tel. Co. v. Climax Tel. Co.,* No. 5:97CV197, Transcript of Hearing at 5 (W.D.Mich. Feb. 12, 1998) (Quist, J.); *Iowa Utils. Bd. v. FCC,* 120 F.3d 753 (8th Cir.1997); *U.S. West Comm., Inc. v. Hix,* 986 F.Supp. 13, 17 (D.Colo.1997); *U.S. West Comm., Inc. v. TCG Seattle,* 971 F.Supp. 1365, 1370 (W.D.Wash.1997). In sections 252(e)(4) and (6), Congress stated in no uncertain terms its intention to have the federal courts, and not the state courts, review MPSC decisions approving or rejecting interconnection agreements born of this subpart. § 252(e)(4) ("No State court shall have jurisdiction to review the action of a State commission in approving or rejecting an agreement under this section."). "This framework obviously recognizes the various state commissions' expertise in technical matters related to intrastate telecommunications ... [,]" but also recognizes that those same state agencies lack expertise in interpreting federal law. *Hix,* 986 F.Supp. at 17. Thus, the statutory structure demonstrates Congress' intent to enlist the assistance of the state commissions while creating a uniform body of federal law in this area. See *Id.* at 17.

▮▮ The Commissioners, nevertheless, argue that the state courts have concurrent jurisdiction to review MPSC decisions enforcing such agreements in which the MPSC would once again be interpreting federal law. Were this the case, parties could avoid the exclusive jurisdiction provision of the Act by simply waiting to challenge a given issue until an enforcement proceeding had been conducted rather than at the approval stage. Such an interpretation defies logic. Further-

more, as the Eighth Circuit Court of Appeals recently noted, "authority to accept or reject these agreements necessarily carries with it the authority to enforce the provisions of agreements that the state commission has approved." *Iowa Utils. Bd.,* 120 F.3d at 804. Thus, the language of subsection (e)(4) prohibiting state courts from reviewing approval and rejection decisions implicitly encompasses interpretation and enforcement decisions. Given the statutory structure and language of section 252, the Court finds that the MPSC decisions interpreting or enforcing interconnection agreements born of this subpart are also within the exclusive jurisdiction of the federal courts. Because the Court holds that section 252 provides specific, statutory jurisdiction, it need not determine whether section 1331 also supports federal jurisdiction.[6]

Having determined that this Court has exclusive jurisdiction to review the MPSC Order herein challenged, the remainder of the Commissioners' motion loses its force. Indeed, every court that has confronted the questions herein presented has held in favor of Nonmovants' position. Because this Court finds the reasoning of those numerous other courts persuasive, a cursory review of the Defendant Commissioners' remaining arguments will suffice.

### B. Eleventh Amendment

▮▮ The Commissioners contend that whether or not the Act provides jurisdiction, they are immune from suit under the Eleventh Amendment to the United States Constitution. Under the Eleventh Amendment, the federal courts generally lack jurisdiction to hear suits filed by individual citizens against the several states.[7] *Port Auth. Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 109 L.Ed.2d 264

---

**6.** The Commissioners also argue that the MPSC's decision is not reviewable because it based solely on state law. Plaintiff, however, alleges that the agreement violates federal law as interpreted by the Commissioners, which brings the action within the parameters of (e)(6). The fact that the Commissioners did not consider federal law in interpreting the agreements does not exempt the Order from that review or the requirements of federal law. Rather, it indicates that the Com-

missioners failed to comprehend their role under the Act.

**7.** "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

(1990); *Pennhurst State Sch. and Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). As an extension of this doctrine, suits in federal court against state agencies and employees sued in their official capacities may also be barred. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). This sovereign immunity is not unlimited, however. *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238 n. 1, 105 S.Ct. 3142, 87 L.Ed.2d 171. Where Congress has explicitly abrogated a state's immunity to suit on the face of a statute pursuant to a valid exercise of power, or where the state itself has consented to being sued, the federal courts are permitted to exercise jurisdiction. *Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Furthermore, where a plaintiff seeks only prospective relief against state officials, generally no Eleventh Amendment protection exists to bar suit. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The Nonmovants here assert that the Commissioners are not entitled to the benefits of sovereign immunity because: 1) the State constructively waived its immunity by electing to participate in the process set forth in section 252; and 2) the *Ex parte Young* doctrine applies to this case.

### 1. Waiver

 A state may effectuate waiver of its immunity "by a state statute or constitutional provision, or by otherwise waiving its immunity to suit in the context of a particular program." *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238 n. 1, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Although in most instances waiver must be explicit, in certain limited circumstances, the State will be deemed to have constructively waived its Eleventh Amendment protection. *MCI Telecomm. Corp. v. BellSouth Telecomm., Inc.,* 9 F.Supp.2d 766, 770 (E.D. Ky.1998). One such circumstance occurs when a state voluntarily engages in an activity regulated by a federal law that mandates federal review of the activity. *MCI Telecomm. Corp.,* 9 F.Supp.2d at 770; *MCI Telecomm. Corp. v. Illinois Bell Tel. Co.,* No. 97 C 2225, 1998 WL 156678, *8 (N.D.Ill. Mar. 31, 1998). The test for determining whether waiver exists is stringent, however. *Atascadero,* 473 U.S. at 241, 105 S.Ct. 3142. Waiver will be found "only where stated by the most express language or 'by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 53 L.Ed. 742 (1909)). *See also Pennhurst,* 451 U.S. at 17, 101 S.Ct. 1531 (1981) ("By insisting that Congress speak with a clear voice, we enable the States to exercise their choice knowingly, cognizant of the consequences of their participation."). Thus, the federal statute must make it clear that state participation in the activity is contingent upon consent to federal jurisdiction. *MCI Telecomm. Corp.,* 9 F.Supp.2d at 770; *MCI Telecomm. Corp.,* 1998 WL 156678 at *8.

 In the instant case, Congress has spoken in one such clear voice. *U.S. West Comm., Inc. v. TCG Seattle,* 971 F.Supp. 1365, 1370 (W.D.Wash.1997). First, the Telecommunications Act demonstrates unequivocally that state participation in the section 252 process is entirely voluntary by providing a mechanism for the FCC to fulfill the State's role if it declines to participate. § 252(e)(5); *U.S. West Comm.,* 971 F.Supp. at 1369; *U.S. West Comm. v. Public Serv. Comm'n,* 991 F.Supp. 1299, 1301–02 (D.Utah 1998). Second, section 252(e)(6) explicitly states that the federal courts will have jurisdiction to review any determination made by the State commission. Given that there is no other reasonable construction of the statute, the Court finds that "[t]he implication that Congress conditioned state participation in the interconnection agreement process on waiver could hardly be clearer." *U.S. West Comm.,* 971 F.Supp. at 1370. For these reasons, the Court joins the numerous other federal courts which have uniformly held that the State's actions in this context constitute a constructive waiver of its Eleventh Amendment immunity. *Michigan Bell Tel. Co. v. Climax Tel. Co.,* No. 5:97CV197, Transcript of Hearing at 5 (W.D.Mich. Feb. 12, 1998) (Quist, J.); *MCI Telecomm. Corp. v. Bell-South Telecomm., Inc.,* 9 F.Supp.2d at 770

(E.D.Ky.1998); *U.S. West Comm., Inc.,* 991 F.Supp. at 1301–02; *U.S. West Comm., Inc.,* 971 F.Supp. at 1370; *MCI Telecomm. Corp. v. Illinois Bell Tel. Co.,* No. 97 C 2225, 1998 WL 156678, *8 (N.D.Ill. Mar. 31, 1998); *AT & T Comm., Inc. v. Michigan Bell Tel., Co.,* Nos. 97–CV–60018, 97–CV–60176, slip op. at 6–7, 9 (E.D.Mich. Mar. 19, 1998); *AT & T Comm., Inc. v. BellSouth Telecomm., Inc.,* Nos. 1:97–cv–884–RCF, 1:97–cv–1318–RCF, slip op. at 5 (N.D.Ga. Feb. 11, 1998); *U.S. West v. TCG Oregon,* No. 97–858–JE, slip op. at 15 (D.Ore. Jan. 30, 1998); *MCI Telecomm. v. AT & T Comm.,* No. 3:97–0523, slip op. at 11–12 (M.D.Tenn. Jan. 27, 1998); *MCI Telecomm., Inc. v. Bell Atlantic–Virginia Inc.,* No. 3:97CV629, slip op. at 5 (E.D.Va. Dec. 24, 1997); *AT & T Comm. v. BellSouth Telecomm., Inc.,* No. 97–79, slip op. at 5–6 (E.D.Ky. Dec. 15, 1997); *AT & T Comm., Inc. v. BellSouth Telecomm., Inc.,* Nos. 3:97–2164, 3:97–2388, slip op. at 4–5 (D.S.C. Dec. 11, 1997); *MCI Telecomm., Inc. v. Sprint–Florida, Inc.,* No. 4:97–CV–231–MP, slip op. at 5 (N.D.Fla. Nov. 21, 1997); *AT & T Comm., Inc. v. BellSouth Telecomm.,* Nos. 5:97–CV–405–BR, 5:97–CV–425–BR, slip op. at 10–11 (E.D.N.C. Nov. 20, 1997); *GTE South v. Morrison,* No. 3:97CV493, slip op. at 4 (E.D.Va. Nov. 7, 1997); *GTE Midwest, Inc. v. Thoms,* No. 4:97–CV–70118, slip op. at 5 (S.D.Iowa Aug. 4, 1997); *U.S. West Comm., Inc. v. Thoms,* 4–97–CV–70082, slip op. at 5 (S.D.Iowa Aug. 4, 1997); *U.S. West Comm., Inc. v. Reinbold,* No. A1–97–25, slip op. at 7 (D.N.D. July 28, 1997); *MCIMetro Access Transmission Servs, Inc. v. GTE Northwest, Inc.,* Nos. C97–742WD, C97–905WD, C97–928WD, slip op. at 1 (W.D.Wash. July 24, 1997).

## 2. Ex parte Young

Turning to Plaintiff's next argument, the Court notes from the outset that the instant case is, as Plaintiff puts it, a "garden variety" *Ex parte Young* case. In *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, the Supreme Court "recognize[d] that if a state official violates federal law, he is stripped of his official or representative character and may be personally liable for his conduct[.]" *Idaho v. Coeur d'Alene,* 521 U.S. 261, 117 S.Ct. 2028, 2043, 138 L.Ed.2d 438 (1997) (cit-

ing *Young,* 209 U.S. at 159–60, 28 S.Ct. 441). More recently, the Supreme Court reiterated this position, stating: "[w]here a plaintiff seeks prospective relief to end a state officer's ongoing violation of federal law, such a claim can ordinarily proceed in federal court." *Coeur d'Alene,* 117 S.Ct. at 2043 (citing *Milliken v. Bradley,* 433 U.S. 267, 289–290, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977)).

■ Plaintiff Ameritech seeks an order enjoining the Commissioners from enforcing an Order which Plaintiff alleges violates federal law. Such enforcement constitutes an "ongoing violation" and the relief sought is clearly prospective despite the fact that the Order involves monetary relief. Consequently, this Court, like the many courts cited below, holds that *Ex parte Young* applies in the instant case to permit this suit to proceed. *U.S. West Comm., Inc. v. Public Serv. Comm'n,* 991 F.Supp. 1299, 1301 (D.Utah 1998); *MCI Telecomm. Corp. v. BellSouth Telecomm., Inc.,* 9 F.Supp.2d at 771 (E.D.Ky. 1998); *U.S. West Comm., Inc. v. Public Serv. Comm'n,* 991 F.Supp. 1299, 1301 (D.Utah 1998); *MCI Telecomm. Corp. v. Illinois Bell Tel. Co.,* No. 97 C 2225, 1998 WL 156678, *13 (N.D.Ill. Mar. 31, 1998); *AT & T Comm., Inc. v. Michigan Bell Tel., Co.,* Nos. 97–CV–60018, 97–CV–60176, slip op. at 6–7, 8 (E.D.Mich. Mar. 19, 1998); *AT & T Comm., Inc. v. BellSouth Telecomm., Inc.,* Nos. 1:97–cv–884–RCF, 1:97–cv–1318–RCF, slip op. at 5 (N.D.Ga. Feb. 11, 1998); *U.S. West v. TCG Oregon,* No. 97–858–JE, slip op. at 17 (D.Ore. Jan. 30, 1998); *MCI Telecomm. v. AT & T Comm.,* No. 3:97–0523, slip op. at 12–16 (M.D.Tenn. Jan. 27, 1998); *MCI Telecomm., Inc. v. Bell Atlantic–Virginia Inc.,* No. 3:97CV629, slip op. at 4 (E.D.Va. Dec. 24, 1997); *AT & T Comm. v. BellSouth Telecomm. Inc.,* No. 97–79, slip op. at 7–8 (E.D.Ky. Dec. 15, 1997); *AT & T Comm., Inc. v. BellSouth Telecomm., Inc.,* Nos. 3:97–2164, 3:97–2388, slip op. at 6 (D.S.C. Dec. 11, 1997); *MCI Telecomm., Inc. v. BellSouth Telecomm., Inc.,* No. 4:97–CV–141–RH, slip op. at 5 (N.D.Fla. Nov. 21, 1997); *GTE Florida, Inc. v. Clark,* No. 4:97–CV–211–RH, slip op. at 6 (N.D.Fla. Nov. 21, 1997); *MCI Telecomm., Inc. v. Sprint–Florida, Inc.,* No.

4:97–CV–231–MP, slip op. at 5 (N.D.Fla. Nov. 21, 1997); *AT & T Comm., Inc. v. BellSouth Telecomm.,* 4:97–CV–262–RH, slip op. at 5–6 (N.D.Fla. Nov. 21, 1997); *AT & T Comm., Inc. v. BellSouth Telecomm.,* No. 5:97–CV–405–BR, 5:97–CV–425–BR, slip op. at 11–13 (E.D.N.C. Nov. 20, 1997); *GTE South v. Morrison,* No. 3:97CV493, slip op. at 4 (E.D.Va. Nov. 7, 1997); *U.S. West Comm., Inc. v. Hix,* No. 97–D–152, slip op. at 2 (D.Colo. Oct.15, 1997); *GTE Midwest, Inc. v. Thoms,* No. 4:97–CV–70118, slip op. at 5 (S.D.Iowa Aug. 4, 1997); *U.S. West Comm., Inc. v. Thoms,* 4–97–CV–70082, slip op. at 4 (S.D.Iowa Aug. 4, 1997); *U.S. West Comm., Inc. v. Reinbold,* No. A1–97–25, slip op. at 7 (D.N.D. July 28, 1997). *Cf. MCI Telecomm. Corp. v. Frisby,* 998 F.Supp. 625 (D.Md.1998) (holding *Ex Parte Young* did not apply to permit relief under 28 U.S.C. § 1331, because § 252(e)(6) provided appropriate remedial structure for claim).

### C. Abstention

■ The Defendant Commissioners also suggest that because Plaintiff has also filed an appeal of the MPSC Order in state court, this Court should abstain under the doctrines set forth in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Burford v. Sun Oil Company,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). "It is axiomatic ... that '[a]bstention from the exercise of federal jurisdiction is the exception, not the rule.' Abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" *Ankenbrandt v. Richards,* 504 U.S. 689, 705, 112 S.Ct. 2206, 119 L.Ed.2d 468 (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). Nevertheless, under certain circumstances, the Abstention doctrines demand that federal courts sitting in equity abstain from judgment in accordance with the principles of comity and federalism. *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 723, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). Two such doctrines are embodied in the above-mentioned cases. Application of both doctrines, however, is contingent upon the availability of an adequate state remedy.

*See GTE Mobilnet v. Johnson,* 111 F.3d 469 (6th Cir.1997) (noting abstention inappropriate where federal courts have exclusive jurisdiction over claims); *Federal Express Corp. v. Tennessee Pub. Serv. Comm'n,* 925 F.2d 962, 968 (6th Cir.1991); *Great Lakes Steel v. Deggendorf,* 716 F.2d 1101, 1105 (6th Cir. 1983) (citing *General Motors Corporation v. Buha,* 623 F.2d 455, 459 (6th Cir.1980)). Having determined that the federal courts have exclusive jurisdiction over Plaintiff's 252(e)(6) claim, the Court finds that abstention is not appropriate.

### D. Johnson Act

■ Turning to the Commissioners' last argument, the Court holds that Ameritech's claims are clearly not barred by the Johnson Act. The Johnson Act prohibits federal district courts from enjoining "the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a state administrative agency or rate-making body of a State political subdivision, where:

(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

(2) The order does not interfere with interstate commerce; and,

(3) The order has been made after reasonable notice and hearing; and

(4) A plain, speedy and efficient remedy may be had in the courts of such state."

28 U.S.C. § 1342. Thus, the Johnson Act deprives a federal court of jurisdiction to review a state commission's order only when all four stated conditions are met. *U.S. West Comm., Inc. v. Public Serv. Comm'n,* 991 F.Supp. 1299, 1302 (D.Utah 1998). In the instant case, however, the Court has already determined that jurisdiction in this case is not based on either diversity or a question arising under the Federal Constitution as required in subsection (1). Consequently, the Johnson Act does not pose a bar to adjudication. *See U.S. West Comm., Inc. v. Public Serv. Comm'n,* 991 F.Supp. 1299, 1302 (D.Utah 1998); *AT & T Comm., Inc. v. Michigan Bell Tel., Co.,* Nos. 97–CV–60018, 97–CV–60176, slip op. at 10 (E.D.Mich. Mar. 19,

828

1998); *U.S. West Comm. v. TCG Oregon,* No. 97–858–JE, slip op. at 18 (D.Ore. Jan. 30, 1998); *MCI Telecomm., Inc. v. Sprint–Florida, Inc.,* No. 4:97–CV–231–MP, slip op. at 4 n. 1 (N.D.Fla. Nov. 21, 1997); *MCI Telecomm., Inc. v. BellSouth Telecomm., Inc.,* No. 4:97–CV–141–RH, slip op. at 4 n. 1 (N.D.Fla. Nov. 21, 1997).

## IV. CONCLUSION

For the foregoing reasons, the Defendant Commissioners' Motion to Dismiss is denied.

### *ORDER*

In accordance with the Opinion entered this date,

**IT IS HEREBY ORDERED** that the Defendant Commissioners' Motion to Dismiss, filed February 26, 1998 (dkt.# 24), is **DENIED;**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Early Hearing, filed May 27, 1998 (dkt.# 67), is **DENIED as moot.**