**PUERTO RICO TELEPHONE COMPANY, Plaintiff,**

v.

**TELECOMMUNICATIONS REGULATORY BOARD OF PUERTO RICO and Cellular Communications of Puerto Rico, Inc., Defendants.**

Civil No. 97–2926(JAF).

United States District Court, D. Puerto Rico.

Aug. 31, 1998.

Sandra E. Torres Lopez, San Juan, PR, Joaquin A. Marquez, Guaynabo, PR, Philip J. Mause, Drinker Biddle & Reath LLP, Washington, DC, for Puerto Rico Telephone Co.

Jose R. Gaztambide, Gaztambide & Plaza, San Juan, PR, Veronica M. Ahern, Robert F. Reklaitis, Laurin H. Mills, J. Breck Blalock, Nixon, Hargrave, Devans & Doyle, LLP, Washington, DC, for Telecommunications Regulatory Bd. of Puerto Rico.

Francisco J. Silva, Legal Counsel, Cellular-One Corporate Offices, Guaynabo, PR, Sara F. Seidman, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Washington, DC, for Cellular Communications of Puerto Rico, Inc.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiff, Puerto Rico Telephone Company ("PRTC"), has brought this action against Defendants, the Telecommunications Regulatory Board of Puerto Rico ("the Board") and Cellular Communications of Puerto Rico, Inc. ("Cellular"), pursuant to the Telecommunications Act of 1996, Pub.L. 104–104, 110 Stat. 56 (1996) (the "Act"). PRTC also brings its claim pursuant to 42 U.S.C. § 1983, alleging that the Board, acting under color of Puerto Rico law, deprived it of property without due process or just compensation, in violation of the constitutional due process and takings clauses.

## I.

### *Facts*

This case stems from a dispute between PRTC and Cellular concerning an interconnection agreement made between these two parties (the "Agreement"). The Agreement defines the relationship between the parties pertaining to each party's use of the other's facilities to complete telephone calls. PRTC is a local exchange carrier providing telephone service throughout Puerto Rico. The Board is a governmental agency of Puerto Rico with regulatory authority over the telephone industry in Puerto Rico. Cellular provides cellular telephone service in Puerto Rico, and its facilities are interconnected with PRTC's facilities. PRTC and Cellular each route calls through the other's facilities when calls originate on one network and terminate on the other.

Before December 22, 1997, when a landline customer of PRTC (wherever located) placed a call to a customer of Cellular, the call was initially routed over PRTC's landline facilities to Cellular's switch in San Juan and then forwarded to the Cellular customer by Cellular. Thus, a call traveled from wherever it was placed to San Juan and was then delivered by Cellular to the called party. When a call originating on PRTC's landline was shifted to Cellular's switch in San Juan, PRTC customers were not billed for placing the call.

Until the end of 1996, Cellular paid PRTC a per-minute fee for delivering long-distance calls of PRTC customers to Cellular customers, and Cellular collected a fee from its customers for delivering such calls. PRTC did not bill its customers for the normally applicable long-distance charge.

Cellular petitioned the Board for an agreement with PRTC and, following negotiations and arbitration between the parties, on Sep-

tember 11, 1997, the Board approved the parties' Agreement.[1] Paragraph IV of the Agreement provided that PRTC could bill its landline customers who called a Cellular customer the applicable long-distance toll. However, Cellular had the choice, in lieu of having PRTC bill its landline customers, of paying PRTC a charge for delivering the long-distance calls to the Cellular customer. In other words, Cellular could pay PRTC a fee for the delivery of long-distance calls to Cellular subscribers or permit PRTC to charge its own customers for the calls.

Through the fault of both PRTC and Cellular and their lack of efficient and timely communication, from September 2, 1997 to December 22, 1997, PRTC routed intra-island long-distance calls to Cellular customers without being paid by either Cellular or its own PRTC customers. Thus, on November 5, 1997, PRTC began to bill its landline customers retroactively from September 2, 1997 for calls made to Cellular customers. PRTC did not provide its customers with either notification of or an explanation for the retroactive billing. PRTC defends its actions arguing that Cellular did not pay it for delivering its customers' long distance-calls to Cellular customers and that, as a result, PRTC exercised its right under paragraph IV of the Agreement to charge its customers the normally applicable long-distance charges for such calls.

On November 25, 1997, Cellular filed a complaint with the Board seeking a cease and desist order prohibiting PRTC from imposing these long-distance charges on PRTC customers. On December 24, 1997, the Board issued an order (the "December 24 Order") requiring PRTC to cease collecting such charges and requiring PRTC to credit or refund charges already made. In the December 24 Order, the Board stated that "[e]ven though PRTC has the right, in principle, under the Interconnection Agreement, to impose toll charges, it is also legally and morally obliged to provide adequate notice to its customers before assessing said charges." *December 24 Order at 9, Docket Document No. 13, Exhibit 2–A.* The Board concluded that PRTC may toll charges upon its custom-

ers for calls made to Cellular customers prospectively up until December 31, 1997 only after providing adequate and reasonable notification to its customers. *Id. at 10.* On the basis of Article 1210 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3375 (establishing a duty to act in good faith while fulfilling obligations under a contract), the Board ruled that PRTC should have given its customers thirty days advance notice before billing such charges. The Board, furthermore, concluded that to charge customers without such adequate notice would be fundamentally unfair and a breach of PRTC's contractual relationship with its customers. Thus, the Board required PRTC to stop billing its customers for long-distance calls to Cellular customers made prior to December 22, and ordered PRTC to give credit to PRTC customers who had already paid the charges. PRTC sought reconsideration of the Board's December 24 Order and requested an immediate stay, but the Board has not yet acted on this request.

## II.

### *Subject Matter Jurisdiction*

Section 252(e)(6) of Title 47 of the U.S.Code provides for federal jurisdiction over interconnection agreements in only limited circumstances. Specifically, section 252(e)(6) provides in relevant part:

> In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement ... meets the requirements of section 251 of this title and this section.

47 U.S.C. § 252(e)(6). In other words, a state commission to which an arbitrated interconnection agreement is submitted must approve or reject the agreement, and section 252(e)(6) allows for federal jurisdiction only for review of the state commission's decision in that context.

PRTC maintains that the Board's December 24 Order effectively prohibits it from levying charges from Cellular customers after December 31, 1997, which is a rejection of

---

1. The Board order approving the Agreement re- mains unchallenged.

a key term of the Agreement and is, therefore, effectively a rejection of the Agreement. PRTC reasons that the Board has essentially rejected the Agreement and that, as a result, we have jurisdiction to review the December 24 Order pursuant to section 252(e)(6). We disagree.

 This court has subject matter jurisdiction under the Act only when a state regulator applies federal law in its acceptance or rejection of an interconnection agreement. That is not the situation in this case. The Board's December 24 Order made a determination that PRTC had violated its duty to act in good faith pursuant to Article 1210 of the Puerto Rico Code in fulfilling its obligations under the Agreement. The December 24 Order regards the interpretation and enforcement of the Agreement under Puerto Rico law and has no basis in federal law. The Board ruled that PRTC could charge its customers only after adequate and reasonable notification and that PRTC had to credit its customers for the retroactive charges in question. This holding is not an approval or disapproval of the Agreement or a rule regarding the Agreement's conformity with 47 U.S.C. § 251, but merely a finding that PRTC has not acted in good faith under the Agreement as required under Puerto Rico law.

Plaintiffs cite *Michigan Bell Telephone Co. v. MFS Intelenet of Michigan, Inc.*, 16 F.Supp.2d 817, 820 (W.D.Mich.1998). In *Michigan Bell*, the plaintiff alleged in part that the order issued by the state commissioners interpreted the interconnection agreement between itself and the defendant in a manner which violated *federal law*. There, the district court ruled that section 252(e) provides for exclusive federal jurisdiction for review of state commissioners' interpretation and enforcement decisions regarding interconnection agreements. PRTC does not allege that the Board interpreted the Agreement in contravention of federal law, but argues that the Board essentially rejected the Agreement in its December 24 Order. Because the Board interpreted the Agreement in light of Puerto Rico law, *Michigan Bell* is inapposite.

## III.

### *Procedural Due Process Claim*

PRTC also alleges that the Board's December 24 Order violated its constitutional right to procedural due process. PRTC argues that the Board approved the Agreement in the September 11, 1997 Order and then issued the December 24 Order rejecting the Agreement, reversing its original approval. PRTC claims that this action on the part of the Board violated specific procedures of the Act regarding the approval and rejection of interconnection agreements.

 Our previous analysis has already led us to conclude that the Board's December 24 Order did not reject the Agreement at all but found that PRTC had violated its obligation to fulfill its contractual duties in good faith. As the Board's December 24 Order did not involve the rejection of the Agreement, the proper procedures under the Act regarding the rejection of interconnection agreements are not relevant.

## IV.

### *Takings Claim*

 The Fifth Amendment provides that the government shall not divest a person of a legally-recognized property interest without just compensation. Three factors are significant in ascertaining the existence of a compensable taking: (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation interferes with the claimant's reasonable investment-backed expectations, and (3) the nature of the governmental action. *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 225, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986). "A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government, than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." Penn *Central Trans. Co. v. City of New York*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (citations omitted). We find that PRTC has not made sufficient allegations to allow us to find a

recognized property interest which has been taken from it. PRTC did not have a recognized property right in retroactively billing its customers, and the Board's prevention of this action is not a taking within the meaning of the Fifth Amendment.

## V.

### Conclusion

In light of the above analysis, we **GRANT** Defendants' motion to dismiss the claim pursuant to the Act for lack of subject matter jurisdiction. We also find that Plaintiff has failed to state a claim for either a due process or takings clause violation. Accordingly, we **DENY** Plaintiff's request for a preliminary injunction.

**IT IS SO ORDERED.**